850 A.2d 548 (2004)
370 N.J. Super. 40
Charles P. VAN WINKLE, Petitioner-Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 2004.
Decided June 16, 2004.
Jeffrey E. Fogel, argued the cause for appellant.
Tamara L. Rudow, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Rudow, on the brief).
Before Judges NEWMAN, PARRILLO and HOENS.
The opinion of the court was delivered by
NEWMAN, J.A.D.
Petitioner Charles Van Winkle appeals from a decision of respondent Department of Corrections (D.O.C.) denying him work *549 credits for the period of time he was incarcerated in Pennsylvania serving concurrent Pennsylvania and New Jersey sentences. We now reverse.
On February 11, 1978, petitioner began serving a seventeen and one-half to thirty-five year sentence in Pennsylvania. Pursuant to the Interstate Agreement on Detainers (IAD), petitioner was temporarily transferred from Pennsylvania to New Jersey to stand trial for pending charges.
On October 13, 1978, the court sentenced petitioner on Indictment No. 812-75, count two, to a term not less than five years nor more than seven years. On count three, petitioner was sentenced to a term not less than two years nor more than ten years to run consecutive to the sentence on count two. On count four, petitioner was sentenced to a term not less than two years nor more than six-year to run consecutive with the sentences imposed under counts two and three. On count five, petitioner was sentenced to a term not less than two years nor more than fifteen years, also to run consecutive with the terms from the other counts. The sentences imposed under all counts were ordered to run concurrent to petitioner's Pennsylvania sentence as well as a previous sentence out of Burlington County, New Jersey.
On Indictment No. 813-75, petitioner was sentenced on count six to a term not less than two years nor more than three years to run consecutive to all counts imposed under Indictment No. 812-75. On count seven, petitioner received a term of not less than three years nor more than five years to run consecutive to count six as well as all counts imposed under Indictment No. 812-75. The sentences imposed under counts six and seven were also ordered to run concurrent to petitioner's Pennsylvania and Burlington sentences.
On Indictment No. 1065-75, petitioner was sentenced on count one to a term not less than three years nor more than five years to run consecutive to all sentences imposed under Indictment Nos. 812-75 and 813-75. On count two, petitioner was sentenced to a term not less than three years nor more than four years to run consecutive to the count one sentence as well as all sentences imposed under Indictment Nos. 812-75 and 813-75. The sentences imposed under this indictment were also ordered to run concurrent to petitioner's Pennsylvania and Burlington sentences.
In sum, petitioner's aggregate New Jersey sentence totaled a minimum of twenty-two years and a maximum of fifty-five years.
Petitioner was returned to Pennsylvania, the sending state, in accordance with the provisions of the IAD where he continued serving his Pennsylvania sentence and concurrent New Jersey sentence. On June 14, 1994 Pennsylvania granted parole to petitioner and released him to the detainers filed against him by this State. Petitioner was transferred to the Adult Diagnostic & Treatment Center in Avenel, where he remains incarcerated. Between June 1994 and September 2001, petitioner earned 466 work credits towards his New Jersey sentence.
In early April 2001, petitioner wrote a letter to the Pennsylvania Department of Corrections requesting his work record so that New Jersey could use this information to award him additional work credits. The Pennsylvania D.O.C. informed the Avenel facility of petitioner's request. Upon learning of petitioner's request, Classification Officer Adele Aroneo wrote a letter to petitioner stating that work credits he may have earned in Pennsylvania are not credited against his sentence in this State.
*550 On appeal, petitioner raises the following issues for our consideration:
I. APPELLANT IS ENTITLED TO WORK CREDITS PURSUANT TO N.J.S.A. 30:4-92 FOR WORK PERFORMED WHILE SERVING A NEW JERSEY SENTENCE.
II. THE DEPARTMENT OF CORRECTION'S INTERPRETATION OF N.J.S.A. 30:4-92 WOULD VIOLATE VAN WINKLE'S RIGHT TO EQUAL PROTECTION OF THE LAW.
Petitioner argues in Point I that N.J.S.A. 30:4-92, governing the award of work credits, entitles him to receive credit for the work he performed while incarcerated in Pennsylvania.
N.J.S.A. 30:4-92 provides in relevant part:
inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the State Board shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensation therefore as the State Board shall determine.
Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both. Such remission from the time of sentence shall not exceed one day for each five days of productive occupation....
[emphasis added].
It is well settled that prison authorities can reduce an inmate's sentence only in a manner prescribed by statute. Trantino v. Dep't of Corr., 168 N.J.Super. 220, 225, 402 A.2d 947, 949 (App.Div.), certif. denied, 81 N.J. 338, 407 A.2d 1212 (1979). N.J.S.A. 30:4-92 provides for the grant of work credits only when an inmate is incarcerated in an institution "within the jurisdiction of the State Board." The list of correctional institutions under the jurisdiction of the D.O.C., which are enumerated under N.J.S.A. 30:1B-8, does not include any out-of-state institution. Consequently, the grant of work credits to petitioner based on his Pennsylvania incarceration is not authorized by N.J.S.A. 30:4-92. Although petitioner argues the legislative purpose behind N.J.S.A. 30:4-92 supports the award of work credits to him, the Legislature did not include a provision in the operative statute to provide work credits for a prisoner serving a superseding sentence in a sister state. N.J.S.A. 30:4-92 simply does not entitle petitioner to work credits from his Pennsylvania incarceration.
Petitioner argues in Point II that his right to equal protection of the law was violated since he would have been entitled to the work credits had he been transferred to Pennsylvania pursuant to the Interstate Corrections Compact (ICC), N.J.S.A. 30:7C-1 to -12. However, petitioner was transferred to New Jersey to dispose of pending charges under the IAD, N.J.S.A. 2A:159A-1 to -15, and then was returned to Pennsylvania to serve a superseding sentence. Ibid. Transfers facilitated under the IAD do not require a state to grant work credit for work done while detained in another state.
An examination of the provisions of the ICC and IAD reveals that petitioner was not eligible to be returned to Pennsylvania under the ICC. The ICC is an interstate compact, and as codified in this state, empowers New Jersey to enter into contracts with other states "for the confinement of inmates on behalf of a sending state in institutions situated within receiving states." N.J.S.A. 30:7C-4(a). New Jersey could be either the sending state or the receiving state. The purpose of the ICC is to provide more extensive options for the *551 treatment and rehabilitation of various offenders than may be available within each individual state. N.J.S.A. 30:7C-2; see also, e.g., Trantino v. N.J. State Parole Bd., 154 N.J. 19, 42, 711 A.2d 260, 271-72 (1998), certif. granted, 165 N.J. 523, 760 A.2d 778 (2000), aff'd in part, 166 N.J. 113, 764 A.2d 940, judgment modified, 167 N.J. 619, 772 A.2d 926 (2001) (discussing the possibility of an out-of-state transfer under the ICC so the prisoner could receive treatment in a halfway house).
The ICC expressly provides for an inmate confined in a receiving state to retain all rights he would have if confined in the sending state; accordingly, the D.O.C. concedes that petitioner would be entitled to work credits for the time served in Pennsylvania if petitioner had been transferred to Pennsylvania under the ICC. N.J.S.A. 30:7C-5(e).
The IAD, on the other hand, permits a state to make a written request for "temporary custody" of an individual against whom an indictment or complaint is pending, who is already incarcerated in a different state. N.J.S.A. 2A:159A-4. The purpose of the IAD is to expedite outstanding charges in order to protect prisoners from the adverse consequences of detainers. Johnson v. Cuyler, 535 F.Supp. 466, 473 (D.Pa.1982), aff'd, 714 F.2d 123 (3d Cir.1983) (applying New Jersey law). In other words, the IAD was designed to aid inmates incarcerated in other jurisdictions in securing a speedy trial in the forum state. State v. Buhl, 269 N.J.Super. 344, 356-57, 635 A.2d 562 (App. Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). Unlike the ICC, the IAD does not provide for a prisoner to retain the rights entitled to him in the sending state while he remains incarcerated in the receiving state.
Quite obviously, situations in which IAD transfers occur differ greatly from those under which ICC transfers take place. The IAD is used to transfer a prisoner to a sister state to resolve pending charges in the receiving state. This is exactly what occurred here. Petitioner was transferred in 1978 to New Jersey for disposition of the charges against him. Since he was transferred to New Jersey under the IAD, he had to be returned to Pennsylvania the same way. Further, there is no indication that an ICC transfer to Pennsylvania was necessary or even appropriate. New Jersey apparently had adequate treatment facilities for petitioner, given that once he finished serving his Pennsylvania sentence, he was transported to New Jersey where he remains incarcerated at Avenel.
Petitioner's contention that he is being treated differently from a similarly situated prisoner transferred under the ICC is flawed. Simply stated, he is not similarly situated because he was not even eligible to be transferred to Pennsylvania under the ICC. The premise for petitioner's equal protection argument is absent and, therefore, the argument fails.
Petitioner also contends that his equal protection rights were violated by the failure to grant him work credits for the time he served in Pennsylvania when he was, at the same time, serving a concurrent sentence out of this State. Petitioner maintains that applying the balancing test utilized in analyzing claims under Art. I par. 1 of the New Jersey Constitution, petitioner is being denied equal protection of the law. Petitioner argues that there is no conceivable, much less rational, basis to distinguish, for purposes of work time credits, between prisoners serving a sentence in State and those serving concurrent time out-of-state such as petitioner. In both instances, petitioner maintains that the legislative interest and purpose of furthering the inmate's rehabilitation is satisfied.

*552 We agree with petitioner and hold N.J.S.A. 30:4-92 unconstitutional as applied to him.
It is clear that New Jersey sentenced petitioner to serve time to run concurrently with his Pennsylvania sentence and that detainers were filed against him. The D.O.C. offers no explanation for why defendant should be denied work credits for the work he performed in Pennsylvania beyond its contention that petitioner was not under New Jersey's "control" during this time. The D.O.C. does not dispute the same rehabilitative purpose is being furthered. Put another way, the D.O.C. does not provide a reasoned basis for distinguishing between petitioner serving a concurrent sentence out-of-state and a prisoner serving a sentence in State. Indeed, the legislative enactment of the ICC authorized work credits for an inmate who serves his or her state sentence in an out-of-state institution. Thus, absence of physical custody or control makes no difference. "Control" merely reflects a jurisdictional concept because the D.O.C. does not, nor did it claim, to supervise the work assignment performed by an inmate, even where the workplace is an in-state institution.
Rowe v. Fauver, 533 F.Supp. 1239 (D.C.N.J.1982) provides a telling contrast to what is presented here. There, the inmate suffered a serious injury at Rahway State Prison. He was successively confined at the prison hospital, the Vroom Readjustment Unit at Trenton State Prison and the Trenton State Prison Hospital. He requested a work assignment and an institutional job to earn work credits against his sentence but was denied work pursuant to a D.O.C. policy and practice of barring prisoners who are classified "medically disabled" from being assigned to any job assignment.
In challenging the policy and practice on equal protection grounds, the inmate pointed out that those inmates who attend school, perform "cell sanitation" or receive injuries on the job receive work credits while they are denied to him in violation of the Fourteenth Amendment. Id. at 1247. The D.O.C. provided a reasoned basis for each of the distinctions made between the class of which the disabled inmate was a member. Inmates injured on a prison job were awarded work credits for equitable reasons "as a form of `workers' compensation' designed to recompense them for injuries sustained while furthering the interests of the prison...." Those who suffered illnesses or injuries unrelated to prison work did not have an equitable claim for compensation. Ibid. Those inmates who attended school were encouraged to pursue an education in the prison. That promoted the institutional aim of rehabilitation. Id. at 1247-48. Lastly, a cell sanitation work program was designed for inmates restricted to close custody. That promoted the morale in an area of the prison which had special security risk. Id. at 1248.
In rejecting the equal protection argument, the District Court judge pointed out that while the lines might have been drawn differently between those who were entitled to receive work credits and those who were not, they were not drawn in an arbitrary fashion nor were the classifications not rationally related to legitimate institutional objectives. Ibid.
The same cannot be said here. The D.O.C. has not offered any reasoned basis to justify a denial of work credits to an inmate performing work while serving a concurrent New Jersey sentence out-of-state and an inmate performing work in New Jersey serving out his or her sentence.
*553 Furthermore, while petitioner was paid by Pennsylvania for the work he performed there, he did not receive a reduction in his Pennsylvania sentence as Pennsylvania does not award work credits. See 61 Pa. Cons.Stat. § 256 (2004). There is no concern that an award of work credits in this State to petitioner would result in "double-dipping." We therefore ascertain no basis to distinguish between work performed by an inmate incarcerated in New Jersey and work performed in Pennsylvania by an inmate serving a concurrent New Jersey sentence. Given that petitioner was serving a concurrent New Jersey sentence, he is entitled to work credits in this State for his work done while incarcerated in Pennsylvania.
Neither we nor the parties have been provided with the specifics of petitioner's Pennsylvania work experience. We remand to the D.O.C. to secure this information from Pennsylvania and determine the amount of work credits to which petitioner is entitled.
Reversed and remanded. Jurisdiction is not retained.