124 P.3d 665 (2005)
130 Wash.App. 772
In re Personal Restraint Petition of Simon SALINAS, Petitioner.
No. 23707-9-III.
Court of Appeals of Washington, Division 3, Panel Three.
December 15, 2005.
*666 Carol A. Elewski, Attorney at Law, Tumwater, WA, for Appellant.
Alex A. Kostin, Department of Corrections Criminal Justice Division, Olympia, WA, for Respondent.
SWEENEY, A.C.J.
¶ 1 Simon Salinas seeks relief from personal restraint imposed following his guilty plea to the offense of first degree unlawful possession of a firearm. He contends that the Department of Corrections (Department) should credit him with earned early release time for the time he served in confinement in South Dakota on a concurrent South Dakota sentence, even though the South Dakota prison system does not have a system in place to calculate earned early release. Its system instead provides for parole.
¶ 2 The question is whether the Department's refusal to compare the systems and calculate credits for earned early release violates Mr. Salinas's right to equal protection of law. Specifically, the question presented is whether there is a rational basis for the Department treating Mr. Salinas differently from inmates who do get credit toward early release for time spent in out-of-state facilities. We conclude there is no rational basis for denying Mr. Salinas credit for earned early release. And we therefore grant his petition.

FACTS
¶ 3 Simon Salinas's Washington sentence for first degree unlawful possession of a firearm ran concurrently with his South Dakota conviction for possession of a controlled substance entered on November 25, 2002. South Dakota returned Mr. Salinas briefly to Washington. He entered a guilty plea and was sentenced in Washington for the firearm offense in August 2003. He then returned to South Dakota to continue serving his sentence there. His Washington sentence ran concurrently with the South Dakota sentence. Former RCW 9.94A.400(3) (2000).
¶ 4 Mr. Salinas's South Dakota sentence was five years. He spent 59 days in a South Dakota county jail and served 567 days in the South Dakota State Penitentiary. On June 30, 2004, Mr. Salinas was paroled after he served about one-third of his five-year sentence. *667 The Washington Department of Corrections credited his Washington sentence with the number of days he served concurrently in South Dakota. But it did not credit him with any earned early release time for his South Dakota confinement.
¶ 5 The Department first cited Mr. Salinas's Washington judgment and sentence as authority. It provided that "[t]he defendant shall receive credit for ... good behavior as certified by the Yakima County Jail/Department of Corrections." Felony Judgment & Sentence ¶ 4.2, Yakima County Superior Court No. 02-1-00768-1, filed Aug. 20, 2003. The Department reasoned that by specifying Mr. Salinas was to receive credit for good behavior certified by the jail and the Department, the court intended to exclude credit for good behavior for time Mr. Salinas served in South Dakota.
¶ 6 But the Department ultimately relied on former RCW 9.94A.150(1) (2001), which provided that "the term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined." The Department took the position that Mr. Salinas has no claim for such credit since South Dakota does not have an earned early release system, and no procedure for calculating any earned early release time.
¶ 7 Melinda Johnson, the director of Central Records for the South Dakota Department of Corrections, states that "[i]n South Dakota, if an offender spends time in an institution pursuant to the conviction for the crime committed ..., he is not awarded any good time credits, per SDCL [South Dakota Codified Laws] 24-15A-1. Instead, he is awarded day-by-day credit only." Resp't's Br. in Response to the Court's Question, App. B.
¶ 8 South Dakota has a parole system, one which seems to reward good conduct:
Each inmate sentenced to a penitentiary term ... shall have an initial parole date set by the department. This date shall be calculated by applying the percentage indicated in the ... grid [contained in the statute] to the full term of the inmate's sentence....
SDCL 24-15A-32. SDCL 24-15A-5 provides that the prison warden
shall keep a true record of the conduct of each inmate specifying in the record each infraction of the rules of discipline.... The record shall be used by the warden and board in determining the inmate's compliance with the inmate's individual program directive at the time of the inmate's initial parole date.
And under SDCL 24-15A-39,
The board may determine the inmate has substantively complied with the individual program directive and release the inmate at the inmate's initial parole date.... The board may also determine the inmate has not substantively met the requirements of the individual program directive, deny release at the initial parole date and set the time for a subsequent discretionary parole hearing.
¶ 9 Mr. Salinas's South Dakota conviction for possession of a controlled substance is a class 4 felony. SDCL 22-42-5. In the sentencing grid set out in SDCL 24-15A-32, second-time offenders sentenced for class 4 nonviolent offenses have their first parole date set at 35 percent of their sentences. In Mr. Salinas's case, the initial parole date for his South Dakota sentence was the date at which he served 35 percent of his five-year sentence. He was paroled on that date. And so his conduct must have been satisfactory during his South Dakota confinement.

EARNED EARLY RELEASE  EQUAL PROTECTION
¶ 10 The question here is whether the Department's refusal to credit Mr. Salinas for the good time he served on his concurrent South Dakota sentence violates his right to equal protection. And this turns on whether there is a rational basis for treating Mr. Salinas differently than inmates who do get those credits because they serve:
(a) concurrent sentences entirely in Washington prisons,

*668 (b) concurrent sentences in out-of-state facilities that have policies for the award of earned early release time, or
(c) Washington sentences in out-of-state facilities pursuant to the Interstate Corrections Compact, chapter 72.76 RCW, regardless of whether such facilities have earned early release policies.
¶ 11 Former RCW 9.94A.150(1) (now codified at RCW 9.94A.728(1)), provided:
[T]he term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined.
The statute does not define "correctional agency." But the Department in its supplemental response has interpreted the term as including, in addition to the Department, agencies operating local jail facilities in Washington and agencies operating out-of-state correctional facilities.
¶ 12 Thus, the statute operates to reduce the sentence of an offender who serves a concurrent out-of-state sentence in an out-of-state facility by the amount of "earned early release time" awarded by the out-of-state correctional agency pursuant to that agency's policies and procedures. The Department does not award any earned early release time to an offender who serves a concurrent out-of-state sentence in an out-of-state facility if the correctional agency operating the facility has no policies and procedures providing for such credit.
¶ 13 The equal protection clauses of the Washington State Constitution, article I, section 12, and the Fourteenth Amendment to the United States Constitution provide that persons similarly situated must receive like treatment under the law. State v. Thorne, 129 Wash.2d 736, 770-71, 921 P.2d 514 (1996). We apply one of three tests to determine whether a person's right to equal protection has been violated. Id. at 771, 921 P.2d 514. We will strictly scrutinize laws which impact a suspect group or implicate a fundamental right. We apply intermediate scrutiny to laws implicating a liberty interest and a semisuspect class. And finally we apply the "rational basis" test to other legislative classifications. There we will uphold the legislation unless it is irrelevant to any legitimate state objectives. Id. The burden is on the party challenging the classification to show that it is purely arbitrary. Id.
¶ 14 Mr. Salinas is not a member of a suspect or semisuspect class, nor does the differing treatment here affect any fundamental right. The test then is rational basis.
¶ 15 First, it is no doubt easier to compare and transfer earned early release time in systems that explicitly provide inmates credit for such time. So the denial of credit to persons in custody in facilities without early release policies favors at least one state purpose  administrative convenience. The rational basis test requires only that the statute's means are rationally related to its goal, not that the means are the best way of achieving the goal. Id. at 772, 921 P.2d 514. Here, a South Dakota inmate's parole date is based in part on the inmate's behavior. But there is no obvious and maybe no easy method to quantify that fact for the award of earned early release credit in Washington.
¶ 16 But it is hard for us to accept administrative inconvenience as a rational basis for discriminating against this inmate since programs like the Interstate Corrections Compact present the same administrative inconvenience. And yet credit for earned early release is allowed there. Inmates who serve their Washington sentences in an out-of-state institution pursuant to the Interstate Corrections Compact receive sentence reduction credit  whether or not the out-of-state institution affords inmates earned early release time:
[t]he Office of Correctional Operations (OCO) Programs Administrator will validate and certify earned release time for offenders housed out of state.
Department of Corrections (DOC) Policy Directive 350.100(VII)(A)(5).
¶ 17 The Department's directive implements RCW 72.74.020(4)(d) of Washington's Interstate Corrections Compact. It provides that the receiving state will report an inmate's *669 conduct to the sending state so that the sending state has a record for adjusting the inmate's sentence based on that conduct.
¶ 18 Mr. Salinas argues on the strength of Van Winkle v. New Jersey Department of Corrections that there is simply no rational basis to distinguish between those serving sentences out of state pursuant to the Interstate Corrections Compact from people serving concurrent sentences out of state like him. Van Winkle v. N.J. Dep't of Corr., 370 N.J.Super. 40, 850 A.2d 548 (2004).
¶ 19 In Van Winkle, the inmate appealed the New Jersey Department of Corrections' denial of work credit for the time he was incarcerated on a concurrent sentence in Pennsylvania. Pennsylvania granted him parole and released him on New Jersey's detainer. He then continued serving time in New Jersey for his longer New Jersey convictions. His New Jersey sentences ran concurrent with the Pennsylvania sentence. Pennsylvania did not give work credit to prisoners. Van Winkle, 850 A.2d at 553. But it nevertheless informed New Jersey of Mr. Van Winkle's work record while in Pennsylvania. The New Jersey Department of Corrections refused him work credit for the Pennsylvania time because he was not under New Jersey's "control." The inmate argued that "there is no conceivable, much less rational, basis to distinguish, for purposes of work time credits, between prisoners serving a sentence in State and those serving concurrent time out-of-state." Id. at 551.
¶ 20 The court held that the fact the inmate was not in New Jersey's physical control while serving his Pennsylvania sentence was not a rational basis for denying him credit for working there, when he would have received such credit had he been incarcerated and working in a prison in New Jersey. Id. at 552. The court buttressed that conclusion by pointing out that the legislature apparently did not think physical control of the inmate a significant factor. The legislature in fact provided for work credit for inmates who served their state sentences in out-of-state institutions pursuant to the Interstate Corrections Compact. Id. We find this reasoning persuasive.
¶ 21 The only reason given by the Department here to refuse Mr. Salinas earned early release time is that South Dakota does not have an earned early release system. But the Washington and South Dakota sentences here ran concurrently. Mr. Salinas was then effectively serving part of his Washington sentence in South Dakota. And as for the administrative hurdle, the Department can treat Mr. Salinas the same way it treats prisoners housed in other states pursuant to the Interstate Corrections Compact  i.e., the receiving state reports the inmate's conduct to the sending state. See RCW 72.74.020(4)(d). And, "[t]he Office of Correctional Operations (OCO) Programs Administrator... validate[s] and certif[ies] earned release time for offenders housed out of state." See DOC Policy Directive 350.100(VII)(A)(5).
¶ 22 The Department's reliance on In re Personal Restraint of Williams and In re Personal Restraint of Fogle is misplaced. In re Pers. Restraint of Williams, 121 Wash.2d 655, 662, 853 P.2d 444 (1993); In re Pers. Restraint of Fogle, 128 Wash.2d 56, 63, 904 P.2d 722 (1995). In those cases, the petitioners challenged county jail policies for earned early release time. In Williams, the court, without reaching the equal protection issue, held that prisoners did not have a right "to challenge their certifications merely because they were not awarded the statutorily permitted maximum amount of good time." Williams, 121 Wash.2d at 666, 853 P.2d 444. In Fogle, the court held that "the state's substantial interest in maintaining prisoner discipline, particularly by preventing flight from prosecution and preserving local control over jails, justifies disparate treatment to overcome Defendants' equal protection challenge." Fogle, 128 Wash.2d at 63, 904 P.2d 722.
¶ 23 Williams and Fogle challenged different treatment by different authorities  the Department of Corrections and the county jails. Here, Mr. Salinas challenges the Department's disparate treatment of him in relation to other offenders. Specifically, the Department recognizes good time for confinement in prisons in other jurisdictions in some cases, but does not recognize it in others. We fail to see the rational basis for denying the same treatment to prisoners *670 such as Mr. Salinas who serve a concurrent sentence in another state's prison.
¶ 24 We therefore order the Department to calculate earned early release time for Mr. Salinas, just as it does for inmates housed under the Interstate Corrections Compact, upon a showing that Mr. Salinas complied with prison rules while incarcerated in South Dakota. See DOC Policy Directive 350.100(VII)(A)(5). The record of conduct that South Dakota law requires prison wardens to keep for use in determining the inmate's eligibility for release on his or her initial parole date, see SDCL 24-15A-5, is evidence of Mr. Salinas's compliance with prison rules in South Dakota.
¶ 25 Mr. Salinas should not, however, receive approximately two-thirds off his Washington sentence just because his parole date in South Dakota was the date he had served 35 percent of his total sentence there. South Dakota's sentencing scheme is different than Washington's. And the parole date provided in South Dakota is not comparable to a standard range sentence calculated under the Washington scheme. Therefore, the time on parole is not comparable to an earned early release calculation in Washington.

PROPER CREDIT FOR COUNTY JAIL TIME
¶ 26 Next Mr. Salinas asks for credit for the 48 days he served in the Yakima County jail from April 13 to June 1, 2002, and for 24 days of good time on those 48 days.
¶ 27 But he does not address the Department's assertion that the 30 days of jail confinement from April 13 to May 13, 2002 was for a community custody violation and not for the firearm offense.
¶ 28 Mr. Salinas has received all the credit he is due for his Yakima County jail time.
¶ 29 We grant the petition and order the award of earned early release time for South Dakota confinement time that Mr. Salinas served on his concurrent South Dakota conviction.
WE CONCUR: SCHULTHEIS and BROWN, JJ.