2007 WY 159

**Thomas MERCHANT, Appellant (Plaintiff),**

v.

**STATE of Wyoming DEPARTMENT OF CORRECTIONS, and State of Wyoming, Board of Parole, and their responsible employees, in their official capacities, Appellees (Defendants).**

No. 06–278.

Supreme Court of Wyoming.

Oct. 10, 2007.

Representing Appellant: Robert T. Moxley of Robert T. Moxley, P.C., Cheyenne, Wyoming.

Representing Appellees: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; David L. Delicath, Senior Assistant Attorney General; Daniel M. Fetsco, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Thomas Merchant contends the district court erred when it denied his request for credit for the time he was incarcerated in Colorado against each of his Wyoming sentences. He also argues the district court erred by rejecting his claim that his constitutional right to equal protection of the law was violated when the State of Wyoming, Depart-

ment of Corrections and the Wyoming Board of Parole (collectively referred to as "the State") denied him the opportunity to earn "special good time" credit off his minimum Wyoming sentences for the time he served in Colorado and, thereby, possibly qualify for parole at an earlier date. We affirm.

## ISSUES

[¶ 2] Mr. Merchant presents three issues on appeal:

I. After a criminal trial is completed under the Interstate Agreement on Detainers ("IAD"), does that statutory compact prohibit Wyoming—the receiving state—from taking the time to "process" the inmate into its own correctional system, before returning the inmate "as soon as practicable" back to the sending state?

II. Does a regulatory scheme deny equal protection of law when it excludes "IAD" inmates from the legal opportunities—*i.e.*, the parole system and "special" good time—afforded to all other Wyoming inmates who serve Wyoming sentences in out-of-state institutions?

III. When an "IAD" defendant is convicted of crimes in Wyoming, what is the legal meaning of a "concurrent" sentence for time to be served thereafter in the prison system of the "sending state," where the Wyoming State Penitentiary sentence structure is for "consecutive" sentences?

The State phrases the issues as:

I. Did the district court and the Wyoming Department of Corrections properly interpret Appellant's sentences?

II. Did the Interstate Agreement on Detainers require that Appellant be returned to Colorado without processing into the Wyoming Department of Corrections?

III. Was Appellant denied equal protection of law because he was not processed into the Wyoming Department of Corrections before return to Colorado?

## FACTS

[¶ 3] The criminal matter forming the basis for this case was considered by this Court in *Merchant v. State*, 4 P.3d 184 (Wyo.2000). In October 1996, Mr. Merchant, who was serving a prison sentence in Colorado, was temporarily transferred to Wyoming pursuant to the Interstate Agreement on Detainers (IAD), Wyo. Stat. Ann. §§ 7–15–101 *et. seq.* (LexisNexis 2007), to stand trial on several outstanding Wyoming criminal charges related to his business activities as a used automobile dealer. *Merchant*, 4 P.3d at 186–87. After a jury returned a guilty verdict on eleven counts, the district court sentenced Mr. Merchant as follows: Count I, four to five years; Count II, six to nine years; Count III, six to nine years; Count IV, six to nine years; Count V, four to five years; Count VI, six to nine years; Count VII, six to nine years; Count IX, six to nine years; Count X, six to nine years; and Count XI, six to nine years.[1] The court then consolidated the sentences by making the sentences on Counts I, II and III concurrent, the sentences on Counts IV, V and VI concurrent, and the sentences on Counts VII, IX, X and XI concurrent. The court specified the three consolidated Wyoming sentences would run consecutively, and provided, "[a]ll these counts — counts one through eleven, excluding count eight—will run concurrent with respect to the Colorado counts."

[¶ 4] The written judgment and sentence mirrored the oral pronouncement:

IT IS FURTHER ORDERED that the terms of the confinement imposed above shall be served concurrent as to Counts I, II and III. Concurrent as to Counts IV, V and VI. Concurrent as to Counts VII, IX, X, and XI. Counts IV, V and VI are to be served Consecutive to Counts I, II and III. Counts VII, IX, X and XI to be served consecutive to all the counts and all counts to be served concurrent with the sentence imposed by the State of Colorado.

Mr. Merchant was returned to Colorado after the sentencing hearing and was not processed into the Wyoming correctional system.

[¶ 5] In 2003, the State of Colorado paroled Mr. Merchant and he was transferred to the Wyoming State Penitentiary. The Wyoming Department of Corrections (WDOC) determined he was entitled to credit for the time he served in Colorado against his Wyoming sentences in successive order. WDOC also determined that he was not entitled to "special good time" credit for the time he served in Colorado. "Special good time" is a reduction of the minimum sentence and is granted, in accordance with rules adopted by the governor under Wyo. Stat. Ann. § 7–13–423 (LexisNexis 2007) and Wyo. Stat. Ann. § 7–13–420 (Michie Cum.Supp.1984), at the warden's discretion to reward exemplary behavior in prison. Because special good time credit has the effect of reducing the minimum sentence, an inmate who earns such credit may qualify for parole at an earlier date.

[¶ 6] Mr. Merchant filed an action in the district court, challenging the WDOC's determination that his Colorado time should be credited against only one of his Wyoming sentences at a time and refusing to give him special good time credit or calendar him for parole while he was incarcerated in Colorado. He also claimed that the State's failure to track him for purposes of special good time credit and parole while he was incarcerated in Colorado violated his constitutional right to equal protection of the law because other Wyoming inmates who are housed out of state are given the opportunity to earn such credit.[2] Although the course of proceedings in this case was quite extensive, we need not detail it here. It is enough to note that the district court entered a Stipulated Judgment under W.R.C.P. 54(b), incorporating a prior summary judgment ruling in favor of the State on Mr. Merchant's claim that he was entitled to credit for the time he served in

---

1. The district court granted a defense motion for judgment of acquittal on Count VIII.

2. Mr. Merchant's original complaint named the WDOC as the defendant and included requests for declaratory relief and a writ of mandamus.

He later amended his complaint to include a request for an injunction and a claim that his civil rights had been violated under 42 U.S.C. § 1983. He also added the Wyoming Board of Parole as a defendant.

Colorado against each of his three Wyoming sentences.[3]

[¶7] Although Mr. Merchant had already been paroled in Wyoming, the district court held a bench trial on his claim that his equal protection rights were violated because he was not tracked for special good time credit or calendared for parole while incarcerated in Colorado. At the trial, an employee from the Wyoming State Penitentiary testified that, while many prisoners are housed out of state, only prisoners processed through the Wyoming correctional system are considered Wyoming inmates and, therefore, tracked for the purposes of "special good time" credit and calendared for parole. She also testified that, because Mr. Merchant came to Wyoming to stand trial pursuant to the IAD and was returned to prison in Colorado after his sentencing, he was not processed into the Wyoming correctional system.

[¶8] After the trial, the district court issued findings of fact and conclusions of law denying Mr. Merchant's equal protection claim. The district court concluded that, under the IAD, Wyoming officials were required to return Mr. Merchant to Colorado without transferring him to the WDOC for processing into the Wyoming correctional system. Addressing Mr. Merchant's equal protection claim, the court ruled:

> [Mr. Merchant] is not similarly situated to inmates who are processed into the WDOC system and later transferred to out-of-state prisons.... Unlike [Mr. Merchant], those inmates were not serving sentences in other states before being temporarily transferred to Wyoming for the limited purpose of disposing of their pending charges in Wyoming. Plaintiff was a Colorado inmate when he came to Wyoming under the IAD, and he did not become a Wyoming inmate until he [was] paroled from his Colorado sentence and was transferred and processed into the WDOC system.

In addition, the court held that, even if he was similarly situated, the State's action was

rationally related to a legitimate state interest.

[¶9] Mr. Merchant appealed from the stipulated judgment and the findings of fact and conclusions of law.

## STANDARD OF REVIEW

[¶10] We review the district court's decision to grant a summary judgment *de novo*. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶11, 126 P.3d 886, 889 (Wyo.2006). Under W.R.C.P. 56(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[¶11] After a bench trial, we review the trial court's conclusions of law *de novo*. The trial court's findings of fact are reviewed under the clearly erroneous standard:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

Also, in reviewing a trial court's findings of fact,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; in-

---

**3.** Mr. Merchant filed a Petition for Review of the stipulated judgment with this Court, but we de- nied that petition.

stead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

We affirm the trial court's findings if there is any evidence to support them.

*Carlson v. Flocchini Invs.*, 2005 WY 19, ¶ 10, 106 P.3d 847, 852 (Wyo.2005), quoting *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003) (citations omitted).

## DISCUSSION

### 1. *Consecutive or Concurrent Sentences*

■ [¶ 12] The Judgment and Sentence stated that Mr. Merchant's three consolidated Wyoming sentences were to be served consecutively and "all [Wyoming] counts to be served concurrent with the sentence imposed by the State of Colorado." The WDOC interpreted the Judgment and Sentence as requiring it to apply his Colorado time to his Wyoming sentences in successive order, and the district court approved that interpretation. Mr. Merchant argues the time he served in Colorado should have been applied to all of his Wyoming sentences simultaneously and the district court erred by ruling otherwise.

■ [¶ 13] We conclude that the district court correctly interpreted Mr. Merchant's sentences. A sentencing court "has discretion in determining whether the sentences will be served consecutively or concurrently." *Gould v. State*, 2006 WY 157, ¶ 24, 151 P.3d 261, 267–68 (Wyo.2006). *See also, Doles v. State*, 2002 WY 146, ¶ 16, 55 P.3d 29, 33 (Wyo.2002); *Eaton v. State*, 660 P.2d 803, 806 (Wyo.1983). The clear intent of the sentencing court was that Mr. Merchant's Wyoming sentences would run consecutively as to one another. *See generally, Kidd v. State*, 937 P.2d 1334, 1336 (Wyo.1997), overruled on other grounds by *Daugherty v. State*, 2002 WY 52, 44 P.3d 28 (Wyo.2002), and *Hamill v. State*, 948 P.2d 1356, 1359 (Wyo.1997) (considering the intent of the sentencing court in interpreting sentences). If we were to accept Mr. Merchant's argument that the time he was incarcerated in Colorado applied to all of his Wyoming sentences simultaneously, the consecutive nature of his Wyoming sentences would essentially be nullified, at least as to the time he served in Colorado. Applying the Colorado time concurrently with one Wyoming sentence at a time gives effect to both the concurrent and consecutive nature of Mr. Merchant's Wyoming sentences.

■ [¶ 14] Moreover, even if we were to determine that Mr. Merchant's Wyoming sentences were unclear or ambiguous, our precedent would require us to construe them as consecutive. In *Pearson v. State*, 866 P.2d 1297, 1299 (Wyo.1994), we stated:

> We hold that, if no specification is made as to whether multiple sentences are concurrent or whether they are consecutive, the sentences will be deemed to be consecutive whether they are imposed in the same case, in different cases, or by different courts.

The district court, therefore, properly ruled that the State had correctly interpreted Mr. Merchant's sentences.

### 2. *IAD Interpretation and Equal Protection Issues*

■ [¶ 15] Mr. Merchant argues the State treated him differently than other similarly situated inmates, in violation of his constitutional right to equal protection of the law,[4] by denying him the opportunity to earn special good time credit and, therefore, possibly qualify for an earlier parole while he was incarcerated in Colorado. Before addressing the merits of Mr. Merchant's claim, we need to determine whether it is moot given the fact he has been paroled. " 'A court should not hear a case where there has been a change in circumstances occurring either before or after a case has been filed that eliminates the controversy.' " *KO v. LDH (In re Guardianship of MEO)*, 2006 WY 87, ¶ 27, 138 P.3d 1145, 1153 (Wyo.2006), quoting *Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1143 (Wyo.1999).

---

4. The right to equal protection of the law is guaranteed by the Fourteenth Amendment to the United States Constitution and various provisions of the Wyoming Constitution, including Article I, §§ 2 and 34.

The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that. the decision will have an impact on the parties."

*Id.* at 1143 (citations omitted).

[¶ 16] In his opening brief on appeal, Mr. Merchant states that he initially requested that the district court order the WDOC to "properly calculate" his sentence and "put Mr. Merchant onto the proper parole track." Nevertheless, he acknowledges that he has already "served his time," and states that "[n]ow ... the relief should be different." Mr. Merchant does not describe the "different" relief he should receive for the claimed violations of his equal protection rights. Because he has been paroled, the relief he requested is no longer necessary. Thus, on the record before us, it is clear that Mr. Merchant's parole renders his constitutional issue moot.

[¶ 17] However, we have recognized exceptions to the general rule that we dismiss moot controversies when a case presents "a controversy capable of repetition yet evading review" or an issue of great public importance. *Board of Trustees of Fremont County School Dist. # 25 v. BM*, 2006 WY 23, ¶ 3, 129 P.3d 317, 319 (Wyo.2006). The parties briefly addressed this matter in the district court. A footnote in a joint stipulation filed prior to the bench trial stated: "The Plaintiff's claims are common to an undetermined number of present and future Wyoming inmates, and are reasonabl[y] certain to arise again. The parties agree that the instant controversy is ripe for adjudication, even though Mr. Merchant has been paroled." While a stipulation by the parties does not bind this Court to consider a matter that no longer presents a justiciable controversy, we agree there is a significant potential for this controversy to arise again and affect other Wyoming prisoners. Thus, we will address Mr. Merchant's constitutional arguments.

[¶ 18] The constitutional guarantee of equal protection " 'mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and the liabilities imposed.' " *Allhusen v. State ex rel. Wyo. Mental Health Prof'l Licensing Board*, 898 P.2d 878, 884 (Wyo.1995), quoting *Small v. State*, 689 P.2d 420, 423 (Wyo.1984). Persons are "similarly situated" if they are subject to the same circumstances and conditions. *WW Ent., Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo.1998).

[¶ 19] Agreeing with the State's position, the district court ruled that the IAD required that Mr. Merchant be returned to Colorado after the pending charges were resolved without first transferring him to the WDOC for processing. The court concluded, because he was not processed into the Wyoming correctional system, he was not similarly situated to other Wyoming inmates.

[¶ 20] Mr. Merchant challenges the State's and district court's interpretation of the IAD as requiring that he be returned to the sending state, Colorado, without being processed into the Wyoming correctional system. Article V of the IAD addresses the nature of the receiving state's temporary custody of an inmate:

(a) In response to a request made under Article III or Article IV hereof, the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in Article III of this agreement. In the case of a federal prisoner, the appropriate authority in the receiving state shall be entitled to temporary custody as provided by this agreement or to the prisoner's presence in federal custody at the place for trial, whichever custodial arrangement may be approved by the custodian.

* * * *

(d) The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one (1) or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction. Except for his attendance at court and while being transported to or from any place at which his presence may be required, the prisoner shall be held in a suitable jail or other facility regularly used for persons awaiting prosecution.

(e) At the earliest practicable time consonant with the purpose of this agreement, the prisoner shall be returned to the sending state.

(f) During the continuance of temporary custody or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the sentence shall continue to run but good time shall be earned by the prisoner only if, and to the extent that, the law and practice of the jurisdiction which imposed the sentence may allow.

(g) For all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending state and any escape from temporary custody may be dealt with in the same manner as an escape from the original place of imprisonment or in any other manner permitted by law.

Section 7–15–101, Art. V.

[¶ 21] We explained how the IAD is to be interpreted in *Odhinn v. State*, 2003 WY 169, ¶¶ 14–15, 82 P.3d 715, 719–20 (Wyo.2003):

In construing statutes, our aim is to effectuate legislative intent. *Director of Office of State Lands & Investments v. Merbanco, Inc.*, 2003 WY 73, 70 P.3d 241 (Wyo.2003). If the language is sufficiently clear, we do not resort to rules of construction. *Id.* We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Id.* We also construe a statute so as to give effect to all of its provisions. *Id.*

With regard to the IAD specifically, it is a federal law subject to federal construction. *Knox v. Wyoming Department of Corrections State Penitentiary Warden*, 34 F.3d 964, 966 (10th Cir.1994). United States Supreme Court interpretations of the IAD are thus binding on state courts. *State v. Reed*, 266 Neb. 641, 668 N.W.2d 245, 2003 Neb. LEXIS 145. The IAD is a remedial statute and should be liberally construed to achieve its purposes, including a speedy trial and the expeditious and orderly disposition of charges. *Corbin v. Superior Court of the State of Arizona*, 155 Ariz. 365, 746 P.2d 937, 939 (1987). However, it also has strict procedural requirements that must be followed. *Id.*

*See also, State ex rel. Pharm v. Bartow*, 2007 WI 13, ¶¶ 15–16, 298 Wis.2d 702, 727 N.W.2d 1, ¶¶ 15–16 (2007) (reciting, in a case interpreting the IAD, federal rules of statutory construction which are similar to Wyoming statutory construction rules).

[¶ 22] The basic policies behind the IAD are:

The IAD is a compact among forty-eight states, the federal government and the District of Columbia creating uniform procedures for lodging and executing detainers.... Wyoming's version of the IAD is promulgated in Wyo. Stat. Ann. § 7–15–101 (LexisNexis 2003). The Act provides a uniform procedure whereby persons who are serving prison sentences in one state, and who are also charged with crimes in another state, can be tried for the pending charges while they are serving their current sentences. It is intended to provide for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State and seeks to minimize the consequent interruption of the prisoner's ongoing prison term.

*Odhinn*, ¶ 17, 82 P.3d at 720 (some citations omitted).

[¶ 23] At the trial, Julie Hopkins, the records manager of the Wyoming State Penitentiary, and Patrick Anderson, the executive

director of the Wyoming Board of Parole, testified about how the State interpreted the IAD and handled both IAD and Wyoming inmates. Ms. Hopkins indicated that inmates brought to Wyoming pursuant to the IAD are not under the province of the WDOC. She stated that, because Mr. Merchant was an IAD inmate, the WDOC simply received a copy of the written Judgment and Sentence and information indicating that he had been transferred back to Colorado. IAD inmates are not processed into the Wyoming correctional system to be tracked for purposes of "special good time" or calendared for parole prior to being returned to the sending state. Instead, when a prisoner is finally transferred to the Wyoming State Penitentiary after being released by the sending state, the WDOC processes him into the Wyoming correctional system. Mr. Anderson testified the State does not have any authority or control over the location or circumstances under which IAD prisoners are incarcerated in the sending state.

[¶ 24] Ms. Hopkins explained that true Wyoming inmates are handled differently than IAD inmates. After being convicted in Wyoming, they are sent to one of the Wyoming penal institutions and processed into the system by the WDOC. After processing, they are considered to be "Wyoming inmates" and, consequently, eligible to receive special good time credit and calendared for parole. After remaining at the penitentiary for a certain period of time, a Wyoming inmate may be transferred out of state for housing pursuant to an interstate compact, such as the Western Interstate Corrections Compact, Wyo. Stat. Ann. §§ 7–3–401 et. seq (LexisNexis 2007), a contract with another state, or an executive agreement. Ms. Hopkins testified that, under the agreements with states housing Wyoming inmates, the WDOC has some degree of authority over, and responsibility for, the circumstances of Wyoming inmates' incarceration.

[¶ 25] The clear language of the relevant sections of Article V establishes that the scope of the receiving state's custody is carefully limited and designed to be "temporary" in nature. The inmate remains under the jurisdiction of the sending state. Section 7–15–101, Art. V(g). The only reason the inmate is transferred from the sending state is to answer to the pending charges against him in the receiving state. Section 7–15–101, Art. V(d). While in the receiving state, he is to be housed in a suitable jail or facility regularly used to hold persons awaiting prosecution. *Id.* Once the charges are resolved, he is to be returned to the sending state "[a]t the earliest practicable time consonant with the purposes of the agreement." Section 7–15–101(V)(e).

[¶ 26] In Wyoming, defendants awaiting prosecution are generally housed in the county jail where the charges are pending, not the Wyoming State Penitentiary. The Wyoming correctional system is administered by the WDOC. The WDOC does not become responsible for an inmate until after he is sentenced to serve a prison sentence and transferred to one of the penal institutions under its jurisdiction. *See* Wyo. Stat. Ann. § 25–1–104 (LexisNexis 2007).

[¶ 27] Mr. Merchant argues that there is nothing in the IAD to prevent the WDOC from taking custody of him and processing him into the Wyoming correctional system before transferring him back to Colorado. Such a procedure would, perhaps, benefit prisoners like Mr. Merchant, but it would not serve the stated and clear purposes of the IAD—to encourage the expeditious and orderly disposition of pending charges. Section 7–15–101, Art. 1; *Carchman v. Nash,* 473 U.S. 716, 720, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Thus, we conclude that the State properly interpreted and applied the provisions of the IAD when it returned Mr. Merchant to Colorado after he was sentenced without processing him into the Wyoming correctional system.

[¶ 28] Our conclusion that the State was not required to "process" Mr. Merchant into the Wyoming correctional system before returning him to the sending state is consistent with the Wisconsin Supreme Court's interpretation of the IAD in *Pharm.* That court stated: "Under the plain language of the statute, temporary custody does not include custody for the purpose of subsequent incarceration in a receiving state." *Pharm,* ¶ 23, 727 N.W.2d 1, ¶ 23, citing *State of New York*

*by Coughlin v. Poe,* 835 F.Supp. 585, 590–91 (E.D.Okla.1993) (stating that temporary custody "does not expressly, or by implication, indicate custody for the purpose of service or execution of sentence in the receiving State"). The Wisconsin Supreme Court further supported its position regarding the limited scope of "temporary custody" by referring to Article 1 of the IAD, which has also been adopted in Wyoming as § 7–15–101, Art. 1.

> The IAD applies to detainers lodged against prisoners that are based on *untried* indictments, informations or complaints. As its purpose set out in Article I explains: "this agreement [is] to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Wis. Stat. 976.05(1). The reference to "untried" or "pending" charges is repeated in 976.05(3)-(5). There is nothing in the IAD that indicates that the rights accorded to prisoners under it attach when there are no untried charges outstanding. Therefore, we conclude that under the plain language of the statute, a prisoner has the following rights after he or she files a Request for Disposition under Article III (§ 976.05(3)):(1) transportation to a receiving state to answer pending charges; (2) commencement of a trial within 180 days in the receiving state; (3) return to the sending state to complete the prisoner's term of incarceration; and (4) upon completion of the prisoner's term of incarceration in the sending state, return to the receiving state to serve any term of incarceration that has been imposed there.

*Pharm,* ¶ 24, 727 N.W.2d 1, ¶ 24.

[¶ 29] The State employees' undisputed trial testimony established that, because Mr. Merchant was not processed into the Wyoming correctional system, his situation was distinguishable from that of Wyoming inmates. On this record, the district court properly ruled that Mr. Merchant was not similarly situated to Wyoming inmates who were processed by the WDOC and then housed out of state. Mr. Merchant was not, therefore, entitled to be treated equally to Wyoming inmates for purposes of eligibility for special good time credit or parole calendaring.

[¶ 30] Moreover, even if we were to conclude that Mr. Merchant was similarly situated to the other Wyoming inmates, we still would not find his equal protection rights were violated when the State treated him differently than Wyoming inmates. In conducting an equal protection analysis, we apply one of two tests to scrutinize the constitutionality of the disparate treatment. When the equal protection claim involves a suspect class or a fundamental right, we apply the strict scrutiny test, which asks whether the state action is necessary to achieve a compelling state interest. *Painter v. Abels,* 998 P.2d 931, 940 (Wyo.2000). If no suspect class or fundamental right is involved, "the analysis involves deciding whether the action bears a rational relationship to a legitimate state interest." *Id.*

[¶ 31] The rational basis test is appropriate for determining Mr. Merchant's equal protection claim because he does not allege he was a member of a suspect class or his claim involves a fundamental right. He contends, however, the State's refusal to give him the opportunity to earn "special good time credit" and, thereby, possibly qualify for earlier parole when Wyoming inmates housed out of state are given that opportunity, was not rationally related to a legitimate state interest.

[¶ 32] The district court ruled that there was a rational basis for treating him differently. It concluded that the trial evidence established that special good time is a management tool "for use by Wyoming wardens, to reward good behavior on the part of Wyoming inmates." The court opined that, because Mr. Merchant was not a Wyoming inmate while he was incarcerated in Colorado, "there existed no rationale to award [him] special good time for the time he served in Colorado toward his Wyoming Sentence." It also ruled that tracking Mr. Merchant "while in Colorado for purposes of awarding warden's special good time would ... work an undue burden on the WDOC and Board [of Parole]."

[¶ 33] The district court's ruling is supported by the trial evidence. Ms. Hopkins testified that "special good time" credit is used as a behavioral incentive for Wyoming inmates and indicated that, since Mr. Merchant was not a Wyoming inmate, the State had no tangible interest in encouraging his good behavior while he was incarcerated in Colorado. Moreover, given the fact that the State has no part in determining where or under what circumstances another state's inmate is housed, Mr. Anderson indicated tracking non-Wyoming inmates for purposes of awarding special good time credit would be a difficult administrative burden.

[¶ 34] The district court ruled further:

Pursuant to Colorado Revised Statutes §§ 17.22.5–301,302, and 405, Plaintiff, as a Colorado inmate, was eligible to receive the equivalent of Wyoming warden's special good time, which is a deduction of time from an inmate's Colorado sentence. To allow Plaintiff to receive warden's special good time in Wyoming for the time he served in Colorado would allow Plaintiff to "double dip," simultaneously receiving time off his sentences in both states, while only serving time in one institution.

[¶ 35] The trial transcript revealed additional reasons for treating IAD inmates differently from Wyoming inmates housed in other states. Mr. Anderson testified that parole is used as a "relief valve for population pressures." In other words, parole can be used to release prisoners who are not deemed to be a risk to society earlier in order to remedy prison overcrowding problems. Obviously, if, like Mr. Merchant, the prisoner is not a Wyoming inmate and is housed in another state as an inmate of that state, there is no reason to give him the opportunity to earn special good time credit and possibly an earlier parole because he is not contributing to the overcrowding of Wyoming prison facilities.

[¶ 36] These reasons all support treating Mr. Merchant differently than Wyoming inmates. Like the district court, we conclude the State's action was rationally related to several legitimate state objectives.

[¶ 37] Mr. Merchant directs us to two cases in support of his contention that the State violated his equal protection rights: *In re Salinas*, 130 Wash.App. 772, 124 P.3d 665 (2005) and *Van Winkle v. New Jersey Dep't of Corrections*, 370 N.J.Super. 40, 850 A.2d 548 (Ct.App.Div.2004). Mr. Salinas served concurrent Washington and South Dakota sentences in a South Dakota institution. *Salinas*, 124 P.3d at 666. After Mr. Salinas was paroled in South Dakota, the Washington Department of Corrections credited his Washington sentence with his concurrent time, but refused to "credit him with any earned early release time for his South Dakota confinement." *Id.* at 667. The Washington agency took the position that he was not entitled to such credit because South Dakota did not have an earned early release program or a procedure for calculating such time. *Id.*

[¶ 38] Without significant discussion, the court concluded that Mr. Salinas was similarly situated to other inmates who did receive earned early release credit. *Id.* at 667–68. The Washington court's analysis, therefore, focused on whether there was a rational basis for treating Mr. Salinas differently. *Id.* at 667. The Washington Department of Corrections posited administrative inconvenience, based on the fact that South Dakota did not have an earned early release program, as a rational basis for discriminating against him. *Id.* at 668–69. The court held that, under the facts of that case, administrative inconvenience was not a sufficient reason to deny Mr. Salinas the credit. *Id.*

[¶ 39] *Salinas* is, obviously, distinguishable from the case at bar because the Washington court assumed that Mr. Salinas was similarly situated to other inmates who did receive credit for earned early release time. Here, we have concluded that Mr. Merchant was not similarly situated to Wyoming inmates who are processed into the Wyoming correctional system prior to being sent out of state for housing. Furthermore, as we explained above, unlike the Washington authorities, the WDOC offered reasons in addition to "administrative inconvenience" to justify treating Mr. Merchant differently.

[¶ 40] Mr. Van Winkle was transferred, pursuant to the IAD, from Pennsylvania to

New Jersey to be tried on outstanding charges in that state. *Van Winkle,* 850 A.2d at 549. After he was convicted, the New Jersey court sentenced him and ordered his sentences to run concurrently with his Pennsylvania sentence. *Id.* Mr. Van Winkle was then returned to Pennsylvania, where he served his concurrent sentences. *Id.* He was eventually paroled in Pennsylvania and returned to New Jersey. *Id.* The New Jersey department of corrections refused to give him work credit against his New Jersey sentences for the time he served in Pennsylvania. *Id.*

[¶ 41] Among other arguments, Mr. Van Winkle contended his equal protection rights were violated "by the failure to grant him work credits for the time he served in Pennsylvania when he was, at the same time, serving a concurrent sentence out of this State." *Id.* at 551. A New Jersey superior court held that Mr. Van Winkle's equal protection rights were violated by the state statute which allowed work credits only when the inmate is incarcerated in an institution under New Jersey's jurisdiction. *Id.* at 552. The court held that the department of corrections' justification for denying him work credits was not sufficient.

> The D.O.C. offers no explanation for why defendant should be denied work credits for the work he performed in Pennsylvania beyond its contention that petitioner was not under New Jersey's "control" during this time. The D.O.C. does not dispute the same rehabilitative purpose is being furthered. Put another way, the D.O.C. does not provide a reasoned basis for distinguishing between petitioner serving a concurrent sentence out-of-state and a prisoner serving a sentence in State.

*Id.* The superior court also remarked that, although Mr. Van Winkle was paid by Pennsylvania for the work he performed in that state, he did not receive a reduction in his Pennsylvania sentence because that state did not award work credits. Thus, there was no concern that if he were awarded work credits in New Jersey, he would be "double-dipping." *Id.* at 553.

[¶ 42] Although *Van Winkle's* course of proceedings was similar to the case at bar, we do not believe the New Jersey ruling is applicable here. The WDOC offered more thorough reasoning for treating Mr. Merchant differently from other Wyoming inmates than was presented in either *Van Winkle* or Salinas. Further, unlike the situation presented in *Van Winkle,* Mr. Merchant would have been "double dipping" if he had received Wyoming special good time credit while incarcerated in Colorado because he was eligible to receive similar credit under the Colorado system. Thus, like the district court, we are satisfied that the State has met the rational basis test and did not, therefore, violate Mr. Merchant's equal protection rights.

## CONCLUSION

[¶ 43] We affirm the district court's ruling that, as a matter of law, Mr. Merchant's Wyoming sentences were consecutive to one another and he was only entitled to credit for his Colorado incarceration against one Wyoming sentence at a time. We also conclude that Mr. Merchant's equal protection rights were not violated when the State refused to give him the opportunity to earn "special good time" credit against the minimum terms of his Wyoming sentences or calendar him for parole while he was incarcerated in Colorado.

[¶ 44] Affirmed.