[No. 31180-1-II.   Division Two.   April 26, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. MONTE EUGENE WELKER, *Appellant*.

*David Schultz*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Thomas C. Duffy, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — The Interstate Agreement on Detainers (IAD)[1] establishes procedures governing the transfer of a prisoner incarcerated in one jurisdiction to temporary custody in a second jurisdiction for disposition of charges pending there. Monte Welker committed first degree burglary in Clark County, Washington in 2001. Welker was charged a month later but, at that time, he was incarcerated in Oregon in the Multnomah County jail on unrelated charges, where he remained for the next two years. During this time, Welker made several requests to officials at the Oregon jail to be brought into Washington, pursuant to the IAD, to stand trial. Welker's requests were

[1] Ch. 9.100 RCW.

not forwarded to Clark County. In 2003, Oregon released Welker and he was transported to Washington where he was arraigned and tried. Welker appeals his first degree burglary conviction arguing that the charge should have been dismissed because his right to a timely trial was violated. But because Welker did not directly contact Clark County to request disposition of the charges pending there, and because Oregon would not have transferred Welker under the IAD, Welker was not amenable to process and we affirm.

## FACTS

¶2 In 2001, Welker armed himself with a gun and forced his way into a Vancouver, Washington home where he stole jewelry and other belongings. The victim identified Welker in a police lineup, and the Clark County Prosecutor's Office filed an information on December 17, 2001, charging Welker with first degree burglary and first degree robbery. A warrant for Welker's arrest issued on the same day. At this time, Welker was incarcerated at a Multnomah County, Oregon jail on unrelated charges.

¶3 In January 2002, Clark County received a motion from Welker for discovery in the burglary and robbery case. In response, the prosecutor's office sent a letter to Welker informing him that it would provide discovery and discuss a potential plea agreement at arraignment.

¶4 In January and March 2002, Welker would plead guilty to several crimes in Oregon. Welker's sentences on those crimes, which totaled more than two years in length, would be served in the Multnomah County jail.

¶5 On December 22, 2001, while his Oregon charges were still pending, Welker sent a letter to the commander of the Multnomah County jail requesting that he be transported to Clark County under the IAD so he could resolve the Washington burglary and robbery charges. On July 21, 2002, Welker sent another letter to the Oregon commander inquiring as to the status of his request. A month later,

Welker received a response informing him that the jail had no knowledge of a detainer having been filed by Clark County. In December 2002, Welker again sent a letter to the Oregon commander asking why he had not been transported to Washington. The commander informed Welker that he would be transferred to Clark County when his Oregon sentences had been served.

¶6 Welker was transported to Clark County, Washington and arraigned on August 14, 2003. Welker thereafter moved to dismiss the charges against him, arguing that the prosecutor's office had failed to comply with the IAD and had therefore denied him his right to a timely trial. Specifically, he argued that Clark County had filed a detainer and, accordingly, it was their obligation to bring him to trial within 180 days of his December 22, 2001 demand for disposition of the charges against him.

¶7 The prosecutor disagreed, asserting that a letter from the office of the Oregon governor set forth Oregon's position that the IAD applied only to those incarcerated in prison, not those held in a local or county jail. The prosecutor also maintained that Clark County had never been informed of Welker's desire to resolve the pending charges. The trial court denied Welker's motion to dismiss, accepting the prosecutor's assertion that they did not know of Welker's desire to resolve the charges and Oregon's position that the IAD applied only to those incarcerated in a state prison.

¶8 Thereafter, a bench trial on stipulated facts was held and Welker was found guilty of first degree burglary.[2] This appeal followed.

## ANALYSIS

■ ¶9 The IAD is an interstate compact between 48 states, the federal government, and the District of Columbia. It establishes procedures for transferring a prisoner incarcerated in one jurisdiction to temporary custody in a

---

[2] Prior to trial, the prosecutor filed an amended information in which it dropped the first degree robbery charge.

second jurisdiction for disposition of charges pending there. *See Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S. Ct. 2079, 150 L. Ed. 2d 188 (2001). The purpose of the IAD is to "encourage the expeditious and orderly disposition" of untried charges so as to minimize "uncertainties which obstruct programs of prisoner treatment and rehabilitation." RCW 9.100.010, Art. I. Both Washington and Oregon are signatories to the IAD. OR. REV. STAT. § 135.775-.793; ch. 9.100 RCW.

¶10 The IAD prescribes two sets of procedures, one by which a state[3] may obtain custody of an out-of-state prisoner for purposes of trial and one by which a prisoner may request the prompt disposition of charges pending against him in another state. RCW 9.100.010, Arts. III-IV. These procedures are triggered only when the state in which an untried indictment, information, or complaint is pending files a detainer. RCW 9.100.010, Art. III(a). Under Article IV of the IAD, if a state has filed a detainer and a request for temporary custody, the accused must be brought to trial within 120 days after his or her arrival in the receiving state. RCW 9.100.010, Art. IV. Under Article III of the IAD, once a state has filed a detainer, the accused may file a demand that the untried charges be resolved. RCW 9.100.010, Art. III. If the demand is appropriately filed, the receiving state must bring the accused to trial within 180 days. RCW 9.100.010, Art. III.

¶11 In this appeal, Welker contends that the charges against him should have been dismissed because he was not brought to trial within 180 days of his demand for disposition of the Clark County charges.[4] Intertwined with this argument is Welker's challenge to the trial court's finding that Clark County had no knowledge of Welker's desire to resolve the charges against him. Resolution of this matter

---

[3] The IAD's definition of a "state" includes the federal government, the District of Columbia, and Puerto Rico. RCW 9.100.010, Art. II.

[4] Welker characterizes his claim as a violation of his right to a speedy trial, but he makes no argument that he was prejudiced in the presentation of his defense by the delay. Thus, he appears to be arguing violations of statutory or rule-based timely trial provisions not violations of his constitutional right to a speedy trial.

below turned, at least in part, on whether the IAD applied to sentences served in a local or county jail. While an interesting question of first impression in Washington, and one over which other jurisdictions have split,[5] we do not reach it in this appeal. The record before us establishes that no IAD detainer was ever filed against Welker. Welker's argument presumes that the arrest warrant issued on December 17, 2001, is a detainer that triggers operation of the IAD. We hold it is not.

¶12 Although the IAD does not define a "detainer," the United States Supreme Court has defined it as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985). The definition controls. *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981) ("because the [IAD] is an interstate compact approved by Congress . . . [it] is . . . a federal law subject to federal rather than state construction"). Under this definition, an arrest warrant will serve as a detainer only if it (1) is based on an untried information, indictment, or complaint; (2) is filed by a criminal justice agency; (3) is filed directly with the facility where a prisoner is incarcerated; (4) notifies prison officials that a prisoner is wanted to face pending charges; and (5) asks the institution where the prisoner is incarcerated to either hold the prisoner at the conclusion of the prisoner's sentence or to notify agency officials when the prisoner's release is imminent. *See Tucker v. United States*, 569 A.2d 162, 165 (D.C. 1990); *Donahoo v. Dortch*, 128 S.W.3d 491, 493-94 (Ky. 2004); *see also State v. Angelone*, 67 Wn. App. 555, 556, 837 P.2d 656 (1992) (State filed arrest warrant *and* detainer).

---

[5] *Compare Dorsey v. State*, 490 N.E.2d 260, 264 (Ind. 1986) (concluding that the IAD's purpose is not effectuated where the prisoner is serving a jail sentence), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563 (Ind. 1995), *and State v. Wade*, 105 Nev. 206, 209-10, 772 P.2d 1291 (1989), *with Escalanti v. Superior Court*, 165 Ariz. 385, 387-89, 799 P.2d 5 (Ct. App. 1990) (concluding that the plain text of the IAD includes prisoners incarcerated in jails).

¶13 Clark County's arrest warrant for Welker did not meet these requirements. The warrant was served on Welker at the Multnomah County jail, but nothing in the record indicates that it was filed with that facility. Moreover, the warrant did not contain the quintessential element of a detainer: It did not ask Oregon to hold Welker or notify Clark County when Welker's release was imminent. As such, the arrest warrant was not a detainer and thus does not support Welker's argument that he was entitled to demand a trial under the IAD's time limits.

¶14 But our conclusion that an IAD detainer had not been filed does not resolve Welker's appeal. A defendant must be brought to trial within either 60 or 90 days of his arraignment. CrR 3.3(b). Where there is a long and unnecessary delay between charging and arraignment, the court sets a constructive arraignment date, which starts the applicable timely trial period, 14 days after the filing of the information. *State v. Greenwood*, 120 Wn.2d 585, 599, 602, 845 P.2d 971 (1993); *State v. Striker*, 87 Wn.2d 870, 875, 557 P.2d 847 (1976). A "long and unnecessary delay," or bad faith on the part of the State, will be found where the defendant is detained in an out-of-state prison or jail and is "amenable to process." CrR 3.3(e)(6); *State v. Anderson*, 121 Wn.2d 852, 858-59, 855 P.2d 671 (1993).[6] An out-of-state prisoner is "amenable to process" when he informs the State of a desire for a timely trial and the State may secure his presence through the IAD. *Anderson*, 121 Wn.2d at 858-59; *State v. Roman*, 94 Wn. App. 211, 216, 972 P.2d 511, *review denied*, 138 Wn.2d 1014 (1999). Whether the State knows the defendant desires to be brought to trial is a factual determination that we review for substantial evidence. *State v. Swenson*, 150 Wn.2d 181, 186, 75 P.3d 513 (2003); *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

¶15 Although Welker informed Oregon jail officials of a desire to timely resolve his Clark County charges, the record supports the trial court's finding that the Clark County

---

[6] Since *Anderson*, CrR 3.3 has been amended four times. Those amendments have not modified the calculation of a timely trial period for out-of-state prisoners.

Prosecutor's Office was unaware of Welker's desire. The record contains a handwritten "Request For Final Disposition [Pursuant to the Washington IAD]," but Welker admits he did not send this request to Clark County. Clerk's Papers (CP) at 21. Welker's only contacts with Clark County involved his January 2002 motion for discovery and his subsequent March 2002 motion to dismiss for failure to provide discovery. But neither of these motions contained a request for transport or mentioned Welker's desire to be brought to Washington for arraignment and trial.[7] As such, sufficient evidence supports the trial court's conclusion that Clark County was unaware that Welker wanted a speedy resolution of the charges against him.[8]

¶16 Moreover, Oregon's refusal to apply the IAD to jail inmates made Welker unamenable to Washington process; Oregon would not have recognized an IAD detainer for Welker or released Welker into Clark County's custody even if Clark County had filed a detainer and request for temporary custody. *See State v. Barefield*, 110 Wn.2d 728, 735-36, 756 P.2d 731 (1988) (finding that Kansas corrections officials acted in good faith by not complying with the IAD based on their interpretation that the IAD did not apply to the facts of that case); *State v. Peterson*, 90 Wn.2d 423, 431, 585 P.2d 66 (1978) (concluding that an out-of-state

---

[7] The record before this court also contains several references to an asserted waiver of extradition by Welker. There is a "waiver of extradition" form, apparently drafted by Welker, but it is not signed by Welker or an Oregon judge, and it was not sent to Clark County. *See* OR. REV. STAT. § 133.843 (waiver must be in writing and before a judge). There is also a note to Welker from a Multnomah County jail employee, which states that "[a] teletype was sent on 01-25-02 to Clark County advising them that you had waived and still had locals." CP at 35. But there is no evidence in the record, nor has Welker ever claimed, that Washington had initiated extradition proceedings against him. A waiver of extradition is effective only when the state has initiated extradition proceedings against the out-of-state defendant; there is no provision in the Uniform Criminal Extradition Act, adopted in both Washington and Oregon, for a defendant to file a "preemptive" waiver of extradition. OR. REV. STAT. § 133.743-.857; chapter 10.88 RCW. Thus, even assuming that Clark County received the teletype from Multnomah County, its probative value was negligible in light of Welker's failure to directly contact the prosecutor's office.

[8] Our conclusion makes it unnecessary to address Welker's claim that he is entitled to credit on his Washington sentence for time served in Oregon after he had "demanded" that he be transported to Clark County.

prisoner was not "available" during periods of unreasonable delay attributed to the sending state). As such, the delay between Clark County's filing of the information and Welker's arraignment cannot be considered "long and unnecessary" as a matter of law and, therefore, Welker's right to a timely trial under CrR 3.3 was not violated.

¶17 Affirmed.

HOUGHTON and BRIDGEWATER, JJ., concur.

Review granted at 155 Wn.2d 1024 (2005).