# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IN RE THE PERSONAL RESTRAINT OF | No. 45716-4-II |
| JON ANDREW STEVENS, | |
| Petitioner. | PUBLISHED OPINION |

SUTTON, J. — In this personal restraint petition (PRP), Jon Andrew Stevens asks us to review the Department of Correction's (DOC) denial of his request for earned early release credit under RCW 9.94A.729(1)(a)[1] for the time he served in an Idaho prison while his Washington sentence ran concurrently with an Idaho sentence. The DOC's asserted justification for denying Stevens's request is that he served his concurrent Washington sentence in Idaho pursuant to the Interstate Agreement on Detainers (IAD).[2] In contrast, the DOC awards earned early release credit to inmates who serve Washington sentences out of state when he or she is transferred to that state

---

[1] RCW 9.94A.729 (1)(a) provides,

> The term of the sentence of an offender committed to a correctional facility operated by the [DOC] may be reduced by earned release time in accordance with procedures that shall be developed and adopted by the correctional agency having jurisdiction in which the offender is confined. The earned release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction.

We refer to earned release time under RCW 9.94A.729(1)(a) as "earned early release credits" or "good time credit."

[2] Chapter 9.100 RCW.

under the Interstate Corrections Compact (ICC).[3] Stevens argues that the DOC's different treatment of him violated his right to equal protection.

Although Stevens has been released from the DOC's custody and his case is moot, we address the merits of Stevens's PRP as a matter of continuing and substantial public interest. We adopt the reasoning of Division Three of our Court of Appeals in *In re Pers. Restraint of Salinas*, 130 Wn. App. 772, 124 P.3d 665 (2005), and hold that the DOC violated Stevens's right to equal protection. We are not holding that the DOC *must* award earned early release credit to inmates like Stevens regardless of the inmate's behavior while serving time in an out-of-state prison. Rather, the DOC must have at least requested the information from Idaho's Department of Corrections, evaluated that information, and applied it appropriately to Stevens's award of earned early release under RCW 9.94A.729(1)(a). By failing to request information from Idaho's Department of Corrections, the DOC violated Stevens's right to equal protection. Therefore we grant Stevens's PRP, but we are restrained from ordering a remedy for Stevens's petition because he has already been released from the DOC's custody.

FACTS

Stevens committed several identity theft crimes in Pierce County in January and February 2009. On March 30, 2011, Stevens entered Idaho custody to serve a sentence in that state. While in Idaho's custody, Stevens exercised his right pursuant to the IAD to be transferred to Pierce County to resolve his outstanding charges in this state.

---

[3] Chapter 72.74 RCW.

Stevens was transferred to the Pierce County jail on November 4, 2011, pursuant to the IAD, and he pleaded guilty on March 12, 2012, to his Pierce County crimes. The trial court sentenced Stevens to 63 months in prison and ordered that Stevens's Washington sentence be served concurrently with his Idaho sentence. The trial court vacated the commitment warrant pursuant to the IAD and ordered the DOC to return Stevens back to Idaho's custody to serve the remainder of his Idaho sentence while his Washington sentence ran concurrently. Idaho paroled Stevens and his Idaho sentence ended in April 2013. Stevens then spent another four days in the Pierce County jail before being transferred to the DOC's custody on May 3 to serve the remainder of his Washington sentence.

On September 30, 2013, Stevens filed a "Motion for Order of Good Time Credits" asking the trial court to order the DOC to credit his Washington sentence with earned early release credit from the time his Washington sentence ran concurrently while he was in Idaho's custody.[4] Stevens had asked the DOC to give him such credit, but the DOC records manager replied that because the Idaho Department of Corrections does not have an earned early release system, the DOC would not apply any earned early release credits to his Washington sentence. The superior court ordered that Stevens's motion be transferred to this court as a PRP.[5]

---

[4] Stevens asked the trial court to order "which ever agency is appropriate" (the Pierce County Jail or the DOC) to award him earned early release credit for the time he served in Idaho while his Washington sentence ran concurrently with his Idaho sentence. Clerks Papers (CP) at 32. It is clear to us that the Pierce County Jail had no role to play in this action and we do not address the portion of Stevens's petition directed at that agency.

[5] CrR 7.8(c)(2).

ANALYSIS

I. OPERATION OF IAD AND ICC

The DOC's asserted justification for denying Stevens's request for good time credit is based upon the differences between the operation and purposes of the IAD and the ICC. Thus, it is necessary to first briefly explain each statute.

The IAD sets out procedures to transfer an inmate who is incarcerated in one state to the temporary custody of another state to resolve pending charges against the inmate in that second state. *State v. Welker*, 127 Wn. App. 222, 226-27, 110 P.3d 1167 (2005), *aff'd*, 157 Wn.2d 557. Forty-eight states, the District of Columbia, and the federal government are parties to the IAD, and its purpose is to encourage states to dispose of untried charges expeditiously so that the inmate's rehabilitation is not hampered. *Welker*, 127 Wn. App. at 226-27.

Under the IAD, either the inmate or an entity in the state with the pending charges, here Washington, may initiate IAD procedures to resolve the inmate's untried charges in that state. RCW 9.100.010, art. III. The state with the pending charges files a request for temporary custody of the inmate or the inmate may initiate the process; the state where the inmate is presently incarcerated for a conviction in that state (in this case Idaho) must then deliver the inmate for temporary custody to the state with the pending charges. RCW 9.100.010, arts. IV, V. Once the pending charges are resolved, the state holding the inmate for temporary custody must return him or her as soon as practicable to the state where the inmate is presently incarcerated. RCW 9.100.010, art. V(e). While in the temporary custody of the state with the pending charges, the inmate is deemed to remain in the custody of and subject to the jurisdiction of the state where the inmate's existing sentence is currently running (here Idaho). RCW 9.100.010, art. V(g). But

while the inmate is in the temporary custody of the state with the pending charges, he or she will accrue earned early release credit to the extent allowed by that state. RCW 9.100.010, art. V(f). The IAD is silent as to information sharing about the inmate between the two states during the IAD procedures.

In contrast to the IAD, states that are parties to the ICC make contracts with each other for "the confinement . . . of offenders" to "fully utilize" and improve each state's institutional facilities. RCW 72.74.020(1), (3)(a). The purpose of the ICC is to provide a process to transfer inmates between states "to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment, and rehabilitation of offenders with the most economical use of human and material resources." RCW 72.74.020(1). Under the ICC, the state in which the inmate was convicted and serving a sentence transfers the inmate to another state to serve his or her sentence, but the transferring state retains jurisdiction over the inmate at all times. RCW 72.74.020(4)(c). Unlike the IAD, when serving his or her sentence in another state pursuant to the ICC, the inmate is not necessarily serving a concurrent sentence of multiple convictions from different states. Notably, the state to which the inmate is transferred must provide the state in which the inmate was convicted with "regular reports . . . on the inmate[']s . . . conduct record." RCW 72.74.020(4)(d). An inmate confined out of state pursuant to the ICC retains the same legal rights as if the inmate had remained in the custody of the state that convicted him or her. RCW 72.74.020(4)(e), (h).

## II. MATTER OF CONTINUING AND SUBSTANTIAL PUBLIC INTEREST

As a threshold matter, the DOC argues that we should dismiss this case because it is moot. We agree that Stevens's case is moot, but we nevertheless review the merits of his petition because the issue raised is a matter of continuing and substantial public interest.

An issue is moot if a court can no longer provide effective relief. *In re Pers. Restraint of Mines*, 146 Wn.2d 279, 283, 45 P.3d 535 (2002). We may reach the merits of a "technically moot" issue, however, if it involves a matter of continuing and substantial public interest. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). We decide whether an issue involves a matter of continuing and substantial public interest according to three factors: (1) the public or private nature of the issue, (2) the need for a judicial decision to guide public officers in future cases, and (3) the issue's likelihood of reoccurrence. *Hunley*, 175 Wn.2d at 907.

Here, Stevens is no longer under restraint because he has already completed his Washington sentence and is no longer in the DOC's custody. Therefore, we can no longer provide relief to Stevens. But the issue Stevens presents in his PRP is a matter of continuing and substantial public interest because it is likely to reoccur any time an inmate is brought to Washington to dispose of unresolved charges and then returned to an out-of-state prison to serve the Washington sentence concurrently with that other state's sentence. Thus, to protect those inmates' equal protection rights, the DOC needs direction when it decides whether to award those inmates earned early release credit for prison time served in an out-of-state prison. Therefore, we address the merits of Stevens's PRP even though he is no longer under restraint.

### III. STEVENS'S RIGHT TO EQUAL PROTECTION

Stevens argues that the DOC's denial of his request for earned early release credit based upon its different treatment of IAD and ICC inmates is not supported by any rational basis and therefore violated his right to equal protection. We agree.

#### A. LEGAL PRINCIPLES

Under RAP 16.4, we may grant a petitioner relief where direct review is unavailable if the petitioner can show he or she is under unlawful restraint by showing a constitutional or state law violation. RAP 16.4(c)(2), (6). Here, Stevens claims that the DOC violated his constitutional right to equal protection. Ordinarily a petitioner seeking collateral review of a claimed constitutional error must establish that the error resulted in actual and substantial prejudice. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). Where a petitioner did not have an opportunity to seek direct judicial review of a claimed error, however, we do not apply the usual heightened threshold requirements that apply to our review of a PRP. *Isadore*, 151 Wn.2d at 299.[6] Instead, the petitioner need only show that he or she is under unlawful restraint under RAP 16.4(b) and RAP 16.4(c). *Isadore*, 151 Wn.2d at 299.

The equal protection clauses of the United States Constitution and article 1, section 12 of the Washington State Constitution guarantee similarly situated persons "like treatment" under the

---

[6] The DOC argues that, because Stevens challenges his earned early release calculation, he must prove that the DOC's actions "were so arbitrary and capricious as to deny [Stevens] a fundamentally fair proceeding so as to work to the offender's prejudice." Br. of Resp't DOC at 5. The DOC misapprehends the law. The arbitrary and capricious rule applies to the process of prison disciplinary proceedings. *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 215, 227 P.3d 285 (2010). Because this case does not involve a prison disciplinary proceeding and Stevens has not had the opportunity to seek direct judicial review of this claimed constitutional error, we evaluate his claim under RAP 16.4(b), (c).

law. *Salinas*, 130 Wn. App. at 777. If a classification impacts a fundamental right or a suspect class, we apply the strict scrutiny standard to determine if the equal protection clause has been violated. *Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011). If a classification impacts a semi-suspect class, we use the intermediate scrutiny standard. *Harris*, 171 Wn.2d at 462. In all other classifications, we use the rational basis test. *Harris*, 171 Wn.2d at 462. We will uphold legislation under the rational basis test unless it is irrelevant to any legitimate state objectives. *Salinas*, 130 Wn. App. at 777. The DOC's classification of inmates in this case does not affect a fundamental right nor does it involve a member of a suspect or semi-suspect class to warrant strict or intermediate scrutiny. Thus, we apply the rational basis test. *Salinas*, 130 Wn. App. at 777.

A state may treat similarly situated groups of people differently under the rational basis test if (1) the state's action applies alike to all members of the group in question, (2) reasonable grounds exist to distinguish between people within and without the group, and (3) the state's different treatment is relevant and connected to a legitimate government purpose. *Schatz v. Dept. of Soc. & Health Servs.*, 178 Wn. App. 16, 24, 314 P.3d 406 (2013), *review denied*, 180 Wn.2d 1013 (2014). The party asserting unconstitutional discrimination must show that the state's differing treatment is purely arbitrary. *Schatz*, 178 Wn. App. at 24.

B. STEVENS IS SIMILARLY SITUATED TO THE INMATES TO WHOM THE DOC AWARDS EARNED EARLY RELEASE CREDIT

The DOC justifies its denial of Stevens's request for earned early release credit for the time his Washington sentence ran concurrently while confined in Idaho because (1) he resolved his Washington charges pursuant to the IAD, (2) the DOC did not have control of or jurisdiction over

Stevens while he was confined in Idaho, and (3) Idaho uses a parole system, not an earned early release credit system. The DOC argues that for these reasons Stevens is not similarly situated to inmates to whom it will award earned early release credit for a Washington sentence served in an out-of-state prison.

The DOC creates two different classes of inmates to whom it will award earned early release for Washington sentences served out of state if the inmate's behavior so deserves: (1) those who serve a concurrent sentence pursuant to the IAD in an out-of-state prison that itself awards earned early release credit and (2) those who serve a Washington sentence in an out-of-state prison pursuant to the ICC, regardless of whether that state awards earned early release credit. *Salinas*, 130 Wn. App. at 776. The DOC carves out a single exception to awarding earned early release credit for inmates who serve a Washington sentence out of state: inmates who serve a concurrent Washington sentence pursuant to the IAD in a state that does not award earned early release credit. *Salinas*, 130 Wn. App. at 777. The DOC argues that this third group of inmates, those like Stevens, are not similarly situated to the first two groups of inmates because the ICC requires the out-of-state prison to send the DOC reports on the inmates' behavior while the IAD does not. Thus, the DOC argues, it has no "jurisdiction" over inmates like Stevens. Br. of Resp't DOC at 12.

Stevens served a portion of his Washington sentence in the custody of Idaho, a state that does not use the earned early release credit system. Stevens is similarly situated to inmates who serve a Washington sentence in an out-of-state prison pursuant to the ICC inmates and inmates who serve Washington sentences pursuant to the IAD in a state that uses the earned early release system. All three groups of inmates experience the same situation regardless of which inmate

transfer statute (the IAD or ICC) applies to them—all of them commit a crime in Washington, are convicted and sentenced in a Washington court, and serve all or a portion of that Washington sentence in another state. They are also alike with respect to the purpose of the earned early release credit statute—to encourage an inmate's good behavior while serving a Washington sentence to preserve the public peace, health, and safety. RCW 9.94A.729(1)(a); *In re Pers. Restraint of Silas*, 135 Wn. App. 564, 571, 145 P.3d 1219 (2006).

C.  THE DOC'S DIFFERENT TREATMENT OF STEVENS IS NOT RATIONALLY RELATED TO A LEGITIMATE STATE INTEREST

We next turn to whether the DOC's denial of Stevens's request for earned early release credit is rationally related to a legitimate government purpose.[7] Stevens argues that Division Three of our Court of Appeals, in *Salinas*, has already answered this question in the negative.[8] We agree with Stevens and hold that no rational basis supports the DOC's denial of Stevens's request for

---

[7] The parties disagree on whether Stevens's claim is subject to the four-factor *Turner v. Safley* test for determining whether a prison regulation that constrains an inmate's constitutional rights satisfies the rational basis test. *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). But we do not apply *Turner* reflexively whenever a case involves an inmate challenging a prison regulation. *McNabb v. Dep't of Corr.*, 163 Wn.2d 393, 404-405, 180 P.3d 1257 (2008). *Turner* applies only when we decide a facial constitutional challenge to a prison regulation. *McNabb*, 163 Wn.2d at 404 (adopting judicial deference to prison administrative decisions as a factor in considering the petitioner's as-applied constitutional challenge to forced artificial nutrition). Stevens's PRP challenges the constitutionality of the DOC's rule as applied to him. The *Turner* test is thus inapplicable.

[8] The DOC asks us not to follow *Salinas* and cites approvingly *In re Pers. Restraint of Williams*, 121 Wn.2d 655, 660-61, 853 P.2d 444 (1993) and *In re Pers. Restraint of Fogle*, 128 Wn.2d 56, 904 P.2d 722 (1995). *Salinas* has already distinguished these cases. *See Salinas*, 130 Wn. App. at 780-81.

earned early release credit based solely on his transfer pursuant to the IAD and Idaho's use of the parole system.[9]

The facts of *Salinas* are identical to the facts of this case. Salinas was incarcerated in South Dakota when he was transferred to Washington to enter a guilty plea and be sentenced for a crime he committed in this state. *Salinas*, 130 Wn. App. at 774. After sentencing in Washington, he was returned to South Dakota to complete his South Dakota sentence while serving his Washington sentence concurrently. *Salinas*, 130 Wn. App. at 774. South Dakota did not have an earned early release credit system, but it mandated that the prison keep "'a true record of the conduct of each inmate specifying in the record each infraction of the rules of discipline.'" *Salinas*, 130 Wn. App. at 774-75 (quoting S.D. Codified Laws § 24-15A-5). South Dakota paroled Salinas, which Division Three of this court concluded must have meant that his conduct was satisfactory. *Salinas*, 130 Wn. App. at 776. The DOC rejected Salinas's request to give him earned early release credit for his time in South Dakota, arguing in part that it could not do so because it did not have control or jurisdiction over him to know what his behavior was in South Dakota. *Salinas*, 130 Wn. App. at 779-80.

The *Salinas* court held that the DOC's denial of Salinas's request for earned early release credit based upon the fact that South Dakota did not use the earned early release credit system failed the rational basis test. *Salinas*, 130 Wn. App. at 780. Even though South Dakota had no

---

[9] The DOC argues that because it did not act with invidious discrimination it did not discriminate against Stevens. The DOC misapprehends the law. A defendant need only prove that he or she was treated differently *because of* membership in a particular group, "i.e., that there was intentional or purposeful discrimination." *State v. Handley*, 115 Wn.2d 275, 290-91, 796 P.2d 1266 (1990). Here, the DOC's decision to treat Stevens differently was purposeful and intentional because its disparate treatment of Stevens was *because of* his membership in a particular group.

"obvious, and maybe no easy, method to quantify" Salinas's good behavior because it did not use the earned early release credit system, the *Salinas* court rejected the DOC's argument that administrative inconvenience justified its disparate treatment, which is the same logic the DOC uses here. *Salinas*, 130 Wn. App. at 778. "[I]t is hard for us to accept administrative inconvenience as a rational basis for discriminating against this inmate since programs like the [ICC] present the same administrative inconvenience. And yet credit for earned early release is allowed there." *Salinas*, 130 Wn. App. at 778. The *Salinas* court thus disposed of the DOC's control and jurisdiction argument, concluding that the DOC could award Salinas earned early release credit because it awards earned early release credit to ICC inmates who serve a Washington sentence in a state that does not use the earned early release system. *Salinas*, 130 Wn. App. at 780.

The DOC argues that although a state housing an inmate serving a Washington sentence under the ICC must transmit to the DOC "regular reports" on the inmate's conduct, a state housing an inmate under the IAD is not required to transmit to the DOC any reports on the inmate's conduct, and thus records on Stevens's conduct while in Idaho do not exist. Br. of Resp't DOC at 11. But the DOC concedes that it awards earned early release credit to inmates transferred to an out-of-state prison under the ICC *regardless* of whether the state housing the inmate uses the earned early release credit system. Wash. Court of Appeals oral argument, *In re Pers. Restraint of Stevens*, No. 45716-4-II (May 18, 2015), at 26 min., 18 sec. to 26 min., 45 sec. (on file with court). And the DOC also concedes that it will apply earned early release credit to an inmate's sentence if the concurrent sentence is served pursuant to the IAD in an out-of-state prison that itself uses the earned early release system. Wash. Court of Appeals oral argument, *supra*, at 20 min., 04 sec. to 20 min., 17 sec. The DOC maintains that Idaho did not have conduct reports

12

on Stevens's conduct while he was confined there, but the DOC concedes that it never inquired with Idaho to verify that assertion. Wash. Court of Appeals oral argument, *supra*, at 33 min., 28 sec. to 33 min., 52 sec. The DOC's justifications for its different treatment of Stevens amounts to administrative inconvenience and the *Salinas* court already rejected the same logic by the DOC.

We agree with *Salinas* that administrative inconvenience is not a rational basis for treating an inmate under the ICC differently from an inmate under the IAD. "[P]rograms like the [ICC] present the same administrative inconvenience. And yet credit for earned early release is allowed there. Inmates who serve their Washington sentences in an out-of-state institution pursuant to the [ICC] receive sentence reduction credit—whether or not the out-of-state institution affords inmates earned early release time." *Salinas*, 130 Wn. App at 778.

The DOC also asserts that its interest in maintaining a safe and secure prison environment justifies treating Stevens differently. Maintaining prison safety and order are "essential goals" that may limit prisoners' constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 521, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). But under *Salinas*'s reasoning, the DOC's interest in maintaining a safe prison environment is not rationally related to denying Stevens earned early release credit for three reasons.

First, the DOC's assertions that it could not have obtained records from Idaho because no records exist is not an accurate reflection of Idaho law. Idaho requires the State Board of Correction to "secure all pertinent available information regarding each prisoner, including . . . his *conduct, employment[,] and attitude in prison*." Idaho Code Ann. § 20-224(1) (emphasis added). Thus, Idaho must have a system for its parole board to track inmates' behavior in its prisons. Yet, at oral argument, the DOC conceded that it had not asked Idaho for Stevens's conduct records and

did not know if any records on Stevens's conduct existed. Wash. Court of Appeals oral argument, *supra*, at 33 min., 28 sec. to 33 min., 52 sec.

Second, the DOC claims that it does not have a reliable system to award earned early release credit for inmates like Stevens because the DOC does not have adequate communication with the other state's corrections facility about the inmate's behavior. This argument amounts to the same "administrative inconvenience" justification that our Court of Appeals has already rejected. *Salinas*, 130 Wn. App. at 778. Like the *Salinas* court, we do not agree with the DOC's arguments that merely seeking conduct information from out-of-state prisons for inmates like Stevens is prohibitively difficult or impossible because it already does so pursuant to the ICC.

Lastly, the DOC presents no evidence that prison safety is compromised when it asks for conduct records from another state for inmates who served a Washington sentence in that state. Contrary to the DOC's apparent concern, Stevens is not asking, and we are not holding, that the DOC *must* award earned early release credit to inmates like Stevens regardless of the inmate's behavior while serving time in an out-of-state prison. Rather, the DOC must have at least requested the information from Idaho's Department of Corrections, evaluated that information, and applied it appropriately to Stevens's award of earned early release under RCW 9.94A.729(1)(a). The DOC does not explain how asking for and evaluating this information would compromise prison safety.

CONCLUSION

We hold Stevens's case is moot, but we address this issue as a matter of continuing and substantial public interest, and we further hold that the DOC violated Stevens's right to equal protection when it denied him earned early release credit for the time he served his Washington sentence in Idaho. We are not holding that the DOC *must* award earned early release credit to

14

No. 45716-4-II

inmates like Stevens regardless of the inmate's behavior while serving time in an out-of-state prison. Rather, the DOC must have at least requested the information from Idaho's Department of Corrections, evaluated that information, and applied it appropriately to Stevens's award of earned early release under RCW 9.94A.729(1)(a). Therefore, we grant Stevens's PRP, but we are restrained from ordering a remedy for Stevens's petition because he has already been released from the DOC's custody.

SUTTON, J.

We concur:

JOHANSON, C.J.

BJORGEN, J.

15