# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58805-6-II |
| Respondent, | |
| v. | |
| JEFFREY RANDALL PARRISH, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Parrish was convicted of unlawful possession of methamphetamine in 2008. The court found that he had the ability or future ability to pay and ordered him to pay $2,350 in various legal financial obligations (LFOs). Parrish asked the court to permit him to satisfy a portion of his LFOs by performing community service. The court granted the request but did not make a finding that Parrish was indigent.

In 2021, the Washington Supreme Court held in *State v. Blake*[1] that Washington's strict liability drug possession statute[2] was void because it violated due process. Parrish then moved to vacate his conviction and for an LFO refund under CrR 7.8. He asked the court to refund the cash equivalent of the community service labor that he performed to satisfy his LFOs, in addition to refunding his cash payments. The court granted the motion in part, vacated his conviction, and

---

[1] 197 Wn.2d 170, 174, 481 P.3d 521 (2021).
[2] Former RCW 69.50.4013(1) (2017).

ordered a refund of $620 in cash payments, but declined to order reimbursement for Parrish's community service.

Parrish appeals the court's partial denial of his CrR 7.8 motion. He argues that refusing to reimburse him for his community service violated the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. He also argues that the trial court erred by treating his CrR 7.8 motion as a civil claim for damages. We disagree and affirm.

FACTS

I. BACKGROUND

In 2008, Parrish pleaded guilty to one count of unlawful possession of a controlled substance under former RCW 69.50.4013(1) (2003). The court considered Parrish's financial resources and found that he had the ability or likely future ability to pay LFOs. The court ordered him to pay $2,350 in LFOs including costs, fees, and restitution. No LFOs were waived or suspended due to indigency. The court also ordered Parrish to perform 240 hours of community service in lieu of jail time.

A.      Conversion of LFOs

Parrish continued to perform community service after completing his required community service hours. Parrish asked the court to permit him to satisfy his LFOs by performing community service and to apply his excess community service hours to the balance of his LFOs. The court ordered that Parrish "will be allowed to perform community service work hours and they will be converted at minimum wage [$8.55 per hour] to be applied to defendant's legal financial obligations." Clerk's Papers (CP) at 40. The court also ordered that Parrish's excess community service already performed could be credited toward his nonrestitution LFOs. The court did not find

Parrish to be indigent or otherwise discuss its reason for allowing community service in lieu of payment.

B.     Satisfaction of LFOs and Subsequent Procedure

Parrish petitioned for discharge after completing 276 hours of community service to be credited toward his LFOs. The State agrees that these hours amounted to about $2,360 in LFO credit and that these hours satisfied all of Parrish's LFOs. The court ordered that Parrish's judgment was satisfied in December of 2010.

Parrish was later arrested twice on pay or appear warrants as the result of an apparent clerical error. Due to the arrests, Parrish paid warrant fees and forfeited cash bail The parties agree that including these payments, Parrish ultimately paid a total of $620 in cash toward LFOs in addition to his community service hours.

## II. POST-*BLAKE* PROCEDURE

In 2021, the Washington Supreme Court held in *State v. Blake* that Washington's strict liability drug possession statute, former RCW 69.50.4013(1), was void because it violated due process. 197 Wn.2d at 174.

Parrish moved to vacate his conviction and for an LFO refund under CrR 7.8(b)(4) and (5), because his conviction was void under *Blake*. Parrish asked the court to refund $620 and to reimburse the remainder of his LFOs that were satisfied through community service. Parrish specified that he was "not seeking damages" and was "not seeking reimbursement for community restitution work done in excess of the total imposed judgment." CP at 22.

Parrish argued that reimbursement of his community service hours was required under the principles of substantive due process, equal protection, and unjust enrichment. Parrish

acknowledged that "we don't have a specific order finding the indigence" to show that his indigence was the cause of any disparate treatment. Verbatim Rep. of Proc. (VRP) at 5. However, he argued that the court should infer his indigence because he was assigned counsel. The State responded that Parrish's community service benefitted the organizations he volunteered for but did not confer a benefit on the State.

The court granted Parrish's motion in part, vacating his conviction and refunding the $620 in cash payments. The court explained that the State did not directly receive a benefit from Parrish's community service hours and that "in the context of these criminal proceedings," there was not a basis for reimbursement for community service hours. VRP at 22. The court noted that there might be a civil avenue for recovery and that "to the extent that we're operating in a world of restitution," Parrish's labor did not directly benefit the State. *Id.* The court adopted Parrish's proposed written order but crossed out a paragraph that would have certified a refund of approximately $2,360 for the community service he performed. Parrish appeals.

ANALYSIS

I. SUBSTANTIVE DUE PROCESS

Parrish argues that the trial court violated due process when it refused to reimburse him for community service hours worked to satisfy his LFOs. We disagree.

A. Substantive Due Process Framework

The Fourteenth Amendment protects people from deprivations of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The due process clause provides substantive and procedural protections. *Romero v. Dep't of Soc. & Health Servs.*, 30 Wn. App. 2d 323, 345, 544 P.3d 1083 (2024). The two inquiries are distinct: substantive due process "requires

deprivations of life, liberty, or property to be substantively reasonable," whereas procedural due process entitles individuals to "'notice . . . and an opportunity to be heard to guard against erroneous deprivation.'" *Id.* at 339, 345 (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006)).

We review substantive due process challenges de novo. *In re Adoption of K.M.T.*, 195 Wn. App. 548, 559, 381 P.3d 1210 (2016). Our substantive due process inquiry begins with "'the nature of the right involved.'" *Chong Yim v. City of Seattle*, 194 Wn.2d 682, 689, 451 P.3d 694 (2019) (quoting *Amunrud*, 158 Wn.2d at 219). If the government has interfered with a fundamental right, we apply strict scrutiny and ask whether "'the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Amunrud*, 158 Wn.2d at 220). If the "'state action does not affect a fundamental right, the proper standard of review is rational basis.'" *Id.* (quoting *Amunrud*, 158 Wn.2d at 222). The rational basis test asks whether the challenged deprivation was "'rationally related to a legitimate state interest.'" *Id.* (quoting *Amunrud*, 158 Wn.2d at 222).

B.      Parrish Has Not Identified A Fundamental Right

Parrish asserts that we should apply strict scrutiny, relying on *Nelson v. Colorado*, 581 U.S. 128, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017), to argue that there is a "fundamental right to restoration" after a conviction is reversed, including reimbursement for work performed in lieu of payment of his LFOs. Br. of Appellant at 6. But *Nelson v. Colorado* performed a *procedural* due process analysis, so its reasoning does not support a *substantive* due process claim. 581 U.S. at 134-35. We agree with the State that Parrish has not identified a fundamental right that would trigger strict scrutiny within our substantive due process analysis.

In *Nelson v. Colorado*, the Supreme Court addressed procedural due process and applied the *Mathews v. Eldridge*[3] balancing test to Colorado's process for obtaining reimbursement of fees paid pursuant to overturned convictions. *Nelson v. Colorado*, 581 U.S. at 135. *Mathews* requires courts to balance three factors in a procedural due process challenge: the private interest affected by the challenged procedure; the risk of erroneous deprivation under the challenged procedure; and the countervailing governmental interest supporting the challenged procedure. 424 U.S. at 335.

In addressing the private interests affected by the Colorado law, the Court explained that the petitioners had "an obvious interest in regaining the money they paid to Colorado" because once their "convictions were erased, the presumption of their innocence was restored." *Nelson v. Colorado*, 581 U.S. at 135. The Court characterized the presumption of innocence as "'[a]xiomatic and elementary'" to the "'foundation of our criminal law.'" *Id*. at 135-36 (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895)). As for the governmental interest in the money, the Court explained, "Colorado has no interest in withholding from [petitioners] money to which the State currently has zero claim of right." *Id.* at 139. The Court ultimately concluded that the Colorado law was procedurally deficient under the *Mathews* test. *Id.*

As a panel of this court recently explained, the *Nelson v. Colorado* Court referred to a foundational principle in criminal law, it did so in the context of weighing the private interest affected by the Colorado law and did not articulate a fundamental right associated with the reimbursement of funds after an overturned conviction. *State v. Nelson*, No. 58161-2-II, slip op. at 6-7 (Wash. Ct. App. Oct. 29, 2024), https://www.courts.wa.gov/opinions/pdf/D2%2058161-2-

---

[3] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

II%20Published%20Opinion.pdf (addressing *Nelson*, 581 U.S. at 135-36). The foundational principle that the *Nelson v. Colorado* Court identified—the presumption of innocence—is certainly fundamentally important, but the Court's recognition of the private interest at stake in a procedural due process analysis did not also create a fundamental right to reimbursement of funds for substantive due process purposes. 581 U.S. at 135-36. Although Parrish discusses the right at stake in this case as the right to a presumption of innocence, Parrish has not explained precisely how refusal to pay him for community service hours invaded his right to a presumption of innocence.

Furthermore, we note that "'[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity'" and "[t]hese fields likely represent the outer bounds of substantive due process protection." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 n.4 (9th Cir. 1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)); *see also State v. Nelson,* No. 58161-2-II, slip op. at 7. Thus, *Nelson v. Colorado* does not support Parrish's substantive due process claim, and Parrish cites to no other legal authority establishing a substantive due process right or common law right to monetary reimbursement for community service performed to satisfy a criminal judgment and sentence when the underlying criminal statute is later held to be unconstitutional. We conclude that Parrish has failed to establish a fundamental right that would elevate scrutiny beyond rational basis in this case.

C.      Reimbursing Only Cash LFO Payments Survives Rational Basis Review

Because Parrish has not shown a threat to a fundamental right, we apply rational basis review. *See Chong Yim*, 194 Wn.2d at 689. Parrish argues that the refusal to reimburse his

community service is supported only by administrative and economic justifications that are insufficient to survive rational basis review. We disagree.

Under the rational basis test, the challenged state action must bear only a rational relationship to a legitimate state interest. *Id.* We "may assume the existence of any necessary state of facts" that we "can reasonably conceive in determining whether a rational relationship exists between the challenged [state action] and a legitimate state interest." *Amunrud*, 158 Wn.2d at 222.

Here, we examine whether a legitimate state interest supports the trial court's partial denial of Parrish's CrR 7.8 motion and refusal to reimburse the cash equivalent of Parrish's LFOs that were completed via community service. Parrish cites *In re Salinas*, 130 Wn. App. 772, 124 P.3d 665 (2005), and *In re Stevens*, 191 Wn. App. 125, 361 P.3d 252 (2015) for the idea that administrative convenience cannot constitute a legitimate state interest. *Salinas* and *Stevens* both involved the same facts, namely, the State's refusal to grant good time early release credit to defendants who were incarcerated out of state. *Stevens*, 191 Wn. App. at 137; *Salinas,* 130 Wn. App. at 774. In both cases, we rejected the State's administrative inconvenience justification not because administrative concerns are wholesale insufficient to constitute a legitimate state interest, but because the State proffered an administrative justification that was not rationally related to the distinction it employed to deny good time credit to the petitioners in those cases. *Salinas*, 130 Wn. App. at 778 (pointing out that good time credit was granted to others despite "present[ing] the same administrative inconvenience"); *Stevens*, 191 Wn. App. at 139 (same).

We conclude that the State has a legitimate interest in limiting reimbursement to those *Blake* defendants who paid their LFOs in cash. For one thing, the distinction between LFOs paid in cash and those satisfied via community service serves to control the flow of reimbursement

requests and allows the state to efficiently refund all readily definable monetary payments. *See In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 449, 853 P.2d 424 (1993) (holding that the State has a legitimate interest in "controlling the flow" of postconviction relief when "[f]aced with a virtually unlimited universe of possible postconviction claims."). Additionally, it is rational to distinguish between community service and cash LFO payments when ordering reimbursement from State funds because, unlike community service performed in lieu of payment, cash payments directly benefitted the State. *See State v. Nelson*, No. 58161-2-II, slip op. at 14-15.

Parrish relies on *Willoughby v. Department of Labor & Industry*, 147 Wn.2d 725, 57 P.3d 611 (2002), to assert that preserving state funds cannot constitute a legitimate interest to satisfy rational basis review. But *Willoughby* applied a different substantive due process standard, the now-rejected "unduly oppressive test" that was formerly interpreted as an elevated level of scrutiny applied to laws regulating the use of property. *Chong Yim,* 194 Wn.2d at 690. *See Willoughby*, 147 Wn.2d at 733. Moreover, it is well established that governments are entitled to make incremental decisions about economic policy, something that refund allocation certainly is. *See Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 563 (1955). And here, unlike in *Willoughby*, we are not confined to the State's proffered justifications but "may assume the existence of any necessary state of facts" that could provide a rational basis for the classification. *Amunrud*, 158 Wn.2d at 222. As a panel of this court explained, there are other reasons to distinguish among LFOs paid in cash versus those paid in labor: it was reasonable to limit the volume of reimbursements and prioritize cash payments, which benefitted the State. *State v. Nelson*, No. 58161-2-II, slip op. at 14-15.

Thus, we hold that the trial court's refusal to reimburse Parrish's community service performed in lieu of paying his *Blake* LFOs survives rational basis review, and Parrish's substantive due process claim fails.

## II. EQUAL PROTECTION

Parrish argues that the trial court denied him equal protection by treating him differently than other similarly situated defendants on the basis of his purported indigency. We disagree.

The equal protection clause of the Fourteenth Amendment prohibits state actors from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "'Equal protection requires that all persons similarly situated should be treated alike.'" *Romero*, 30 Wn. App. 2d at 347 (internal quotation marks omitted) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008)).

As a threshold matter, an individual raising an equal protection claim must show that they "received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). If the individual does not make this threshold showing, no equal protection analysis is required. *See State v. S.D.H.*, 17 Wn. App. 2d 123, 141, 484 P.3d 538 (2021).

A.  Parrish Has Not Shown Disparate Treatment Because of Indigency

To show a violation of the equal protection clause, Parrish must first "establish his classification by showing he was treated differently from others who were similarly situated." *Osman*, 157 Wn.2d at 485. Parrish attempts to show that people who satisfy their LFOs through community service hours are similarly situated to wealthier people who satisfy their LFOs through

cash payments. Parrish asserts that because of his indigency, he was "not similarly restored" compared to wealthy defendants who paid their LFOs in cash. Br. of Appellant at 15. We disagree.

Parrish's claim rests on the premise that indigent individuals satisfy their LFOs through community service and wealthy individuals satisfy their LFOs by paying cash. He asserts: "Similarly situated people who had money to pay off their LFOs are receiving full reimbursement. But people who lack money, who paid the same LFOs for the same unconstitutional and void convictions in labor, are not similarly restored." *Id.* Parrish does not, however, show that the group of individuals who performed community service in lieu of LFOs consists of exclusively or even mostly indigent individuals. And although Parrish may be correct that those who paid their LFOs in cash are, on the whole, wealthier than those who performed community service in lieu of LFOs, this does not establish that the trial court permitted him to perform community service in lieu of payment *because* he was indigent.

Parrish asserts that the terms of his LFOs were modified to permit community service in lieu of LFO payments "[b]ecause he is indigent." *Id.* at 8. He cites to RCW 10.01.160(4), which currently allows a sentencing court to "modify the method of payment" of court costs "or convert the unpaid costs to community restitution hours" if payment poses a "manifest hardship" to the defendant. RCW 10.01.160(4) goes on to provide, "Manifest hardship exists where the defendant is indigent." However, the record does not show what authority the trial court relied on when it converted Parrish's LFOs to community service.

Moreover, at the time of the relevant orders, the statute mentioned neither indigency nor community restitution. *See* former RCW 10.01.160(4) (2010). And neither the current nor former statute actually *requires* indigency to convert LFOs to community service, and we cannot presume

that the legislature actually *meant* to create a class of indigent defendants when it chose to use a different term. *See Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007) ("When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings.").

Indeed, the record does not establish that the trial court considered Parrish's finances at the time it permitted future community service work. Nor does the record show that the court considered Parrish's finances at the time it deemed Parrish's LFOs satisfied. The sole ruling regarding Parrish's ability to pay LFOs was entered at the time the LFOs were initially imposed, when the trial court found he *would* likely be able to pay them. Therefore, we find no support in the record for Parrish's assertion that "the court used Mr. Parrish's indigence as the basis for exacting LFO payment in the form of labor in lieu of cash." Br. of Appellant at 13.

On this record, Parrish has not met his burden to show that the trial court's partial denial of Parrish's CrR 7.8 motion was disparate treatment of similarly situated people *because of* indigency, nor has he shown that he is a member of a class of indigent people. Because he has failed to make the threshold showing that he "received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination," our review of Parrish's equal protection challenge ends here and we need not address his argument for heightened scrutiny. *Osman*, 157 Wn.2d at 484.

IV. CHARACTERIZATION AS CIVIL DAMAGES ACTION

Parrish argues that the trial court abused its discretion by characterizing his CrR 7.8 motion as a civil claim for damages and denying his claim for reimbursement of community service based on *State v. Hecht*, 2 Wn. App. 2d 359, 409 P.3d 1146 (2018). The State responds that the trial court

properly relied on *Hecht* when it declined to award Parrish restitution for his labor. Parrish replies that CrR 7.8 is the proper means for his claim of LFO reimbursement. We agree with Parrish that CrR 7.8 is the proper procedural avenue, but we hold that the trial court did not improperly characterize his motion as a civil claim for damages.

CrR 7.8 provides that a trial court "may relieve a party from a final judgment, order, or proceeding" where, relevant to this appeal, "[t]he judgment is void" or for "[a]ny other reason justifying relief." CrR 7.8(b)(4)-(5). We review the denial of a CrR 7.8 motion for an abuse of discretion. *State v. Robinson*, 193 Wn. App. 215, 217, 374 P.3d 175 (2016). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

Division One of this court recently held that CrR 7.8 is the exclusive procedural means by which to seek refund and cancellation of superior court imposed *Blake* LFOs. *Civil Survival Project v. State*, 24 Wn. App. 2d 564, 578, 520 P.3d 1066 (2022). In *Civil Survival Project*, the court reasoned that CrR 7.8 "clearly applies to the reconsideration of constitutionally invalid convictions" because it "explicitly contemplates being used to address precisely this sort of issue: 'A defendant is entitled to relief under subsection (i) where the person . . . is serving a sentence *for a conviction under a statute determined to be void, invalid, or unconstitutional*.'" *Id.* at 578 (alteration in original) (quoting CrR 7.8(c)(2)). A panel of this court recently adopted *Civil Survival Project*'s reasoning, holding that CrR 7.8 is the correct and exclusive procedural means by which to seek refund and cancellation of superior court imposed *Blake* LFOs. *State v. Nelson*, No. 58161-2-II, slip op. at 17. Therefore, we agree with Parrish that the claim was properly raised under CrR 7.8.

Even so, Parrish has not shown that the trial court's partial denial of his motion was an abuse of discretion, because the record does not support his claim that the trial court misconstrued his motion as a civil claim for damages. For one thing, the trial court's order clearly treated Parrish's motion as a CrR 7.8 motion—the court signed Parrish's proposed order, except the court crossed out the portion of the order that would have ordered reimbursement for his community service hours. And in its oral ruling, the court explained that there was no basis to reimburse community service hours "*in the context of these criminal proceedings.*" VRP at 22 (emphasis added). This shows that the trial court's oral ruling, in addition to its written order, took Parrish's motion for what it was, a CrR 7.8 motion.

We therefore conclude that Parrish has not shown an abuse of discretion in the trial court's partial denial of his motion for relief from his judgment and sentence under CrR 7.8.

CONCLUSION

We affirm.

No. 58805-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

PRICE, J.