

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PAUL PEREZ, JR., | § | No. 08-24-00101-CR |
| Appellant, | § | Appeal from the |
| v. | § | 264th District Court |
| THE STATE OF TEXAS, | § | of Bell County, Texas |
| Appellee. | § | (TC# FR81828 ) |

### MEMORANDUM OPINION[1]

Appellant Paul Perez, Jr. appeals his conviction for aggravated sexual assault of a child, arguing that the trial court lost jurisdiction over his case pursuant to deadlines in the Interstate Agreement on Detainers Act (IADA). We hold that the deadlines did not apply for three independent reasons: because Perez was not subject to an untried indictment at the time he made his IADA request, because Perez has not shown that a detainer had been lodged at the time he made his request, and because the Texas Supreme Court COVID-19 emergency orders suspended the deadlines. Finding no error, we affirm.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Perez pled guilty and was convicted in federal court of producing child pornography. He was sentenced to 20 years in federal prison. On January 2, 2020, after Perez began serving his federal sentence in Fort Worth, a Killeen police officer filed a complaint and affidavit with the Bell County District Clerk, alleging that Perez confessed to aggravated sexual assault by penetration of a five-month-old child. That same day, Perez was given a "Notice of Untried Indictment" notifying him of his right to request that he be brought to trial within 180 days. Perez signed a form requesting "final disposition of all untried indictments, information or complaints on the basis of which detainers have been lodged against [him]." That request along with a "Certificate of Inmate Status" was received by the District Attorney on January 7, 2020, and filed with the Bell County District Clerk on January 8, 2020. On February 26, 2020, a grand jury indicted Perez, alleging that he "intentionally and knowingly cause[d] the penetration of the sexual organ of [M.A.], a child who was then and there younger than 6 years of age, by the defendant's sexual organ."

A court date was scheduled for April 17, 2020, and arrangements were made to transfer Perez from the federal prison in Fort Worth to Bell County for the proceedings. However, before the scheduled transfer could happen, the COVID-19 pandemic swept the country. The Texas Supreme Court issued a series of emergency orders, effective from March 13, 2020, to August 1, 2021, authorizing courts to, if constitutionally permissible, "modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order[.]"[2] In addition

---

[2] *First Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020); *Twelfth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 144 (Tex. 2020); *Seventeenth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 119, 120 (Tex. 2020); *Eighteenth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 122 (Tex. 2020); *Twenty-Second Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 129 (Tex. 2020); *Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 609

to those emergency orders, the Bell County Local Administrative Judge issued orders suspending jury trials until June 21, 2021. Perez's transfer to Bell County and the trial were cancelled.

Over a year later, on July 30, 2021, the State filed a motion for continuance explaining that trial had been impossible because the district court did not allow any defendants in federal custody to be transported to the Bell County jail and because jury trials had been suspended. After a hearing, the trial court granted the continuance. On September 23, 2021, Perez filed his own motion for continuance to allow his newly appointed attorney time to review discovery. The trial court also granted Perez's continuance.

On November 30, 2023, Perez pled guilty and was sentenced to 55 years. He appeals his conviction. His sole issue is whether, under the Interstate Agreement on Detainers Act, the trial court was required to dismiss his case with prejudice because it was not brought to trial within 180 days of his request for a final disposition.

## II. Applicable Law and Standard of Review

### A. Interstate Agreement on Detainers Act (IADA)

The IADA is an interstate compact that was adopted by Texas and codified in Article 51.14 of the Texas Code of Criminal Procedure. *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001) (citing 18 U.S.C. app. § 2). The Act states the evils that it intends to remedy:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the

---

S.W.3d 135 (Tex. 2020); *Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 863 (Tex. 2020); *Thirty-Third Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 179 (Tex. 2021); *Thirty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 897 (Tex. 2021); *Thirty-Eighth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 900 (Tex. 2021).

expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

Tex. Code Crim. Proc. Ann. art. 51.14, art. I.

Under the IADA, "[i]f a defendant is serving a term of imprisonment in another state and the State of Texas files a detainer in that other state, both the State of Texas and the defendant have a right to demand the transfer of the defendant to Texas for a final disposition of the pending Texas charge."[3] *Hopper v. State*, 520 S.W.3d 915, 924–25 (Tex. Crim. App. 2017); Tex. Code Crim. Proc. art. 51.14, arts. III(a), IV(a). If the defendant requests final disposition in accordance with the procedures of the IADA, he must be brought to trial within 180 days after the prosecuting authority and court with jurisdiction receive his request.[4] Tex. Code Crim. Proc. art. 51.14, art. III(a). Time periods are tolled "whenever and for as long as the prisoner is unable to stand trial." *Id*. at art. VI(a). Additionally, a court can grant a continuance "for good cause shown." *Id.* at art. III(a). Absent tolling or a continuance, the court must dismiss a case with prejudice if the defendant is not brought to trial within 180 days of the receipt of his request. *Id.* at arts. III(d), V(c); *State v. Votta*, 299 S.W.3d 130, 135 (Tex. Crim. App. 2009).

Perez argues that the trial court was required to dismiss his case because the 180-day deadline expired on July 5, 2020, and the State's motion for continuance, filed more than a year later, was untimely. The State responds that the 180-day deadline was tolled under the provisions

---

[3] As used in the IADA, "State" includes the United States. Tex. Code Crim. Proc. Ann. art. 51.14, art. II(a). Therefore, a prisoner and the State of Texas can demand transfer from an in-state federal prison to try state charges.

[4] If the State rather than the defendant makes the request, "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state" unless a continuance for good cause is granted. Tex. Code Crim. Proc. art. 51.14, art. IV(c).

of the IADA because Perez was "unable to stand trial" while jury trials were suspended and that it timely filed a motion for continuance after that suspension was lifted.

## B. Standard of review

We review de novo the question of whether a trial court has complied with the IADA. Factual findings necessary to the issue of compliance are reviewed under the clearly erroneous standard. *Estrada v. State*, 647 S.W.3d 923, 928 (Tex. App.—Fort Worth 2022, pet. ref'd); *Lasker v. State*, 577 S.W.3d 583, 589 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *Walker v. State*, 201 S.W.3d 841, 845 (Tex. App.—Waco 2006, pet. ref'd). Under that standard, "[w]e defer to the trial court's ruling in the absence of exceptional circumstances." *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012) (discussing the clearly erroneous standard of review in the context of a *Batson* challenge case).

## III. ANALYSIS

The question as presented by the parties is whether COVID-19 restrictions rendered Perez "unable to stand trial," tolling the deadlines of the IADA. But we do not reach that question because we hold that the deadlines were not triggered to begin with. Even if they had been triggered, the 180-day deadline was suspended because of the COVID-19 emergency orders.

For a prisoner's request for a final disposition to start the running of the deadlines, a detainer must be lodged against him due to an untried indictment, information or complaint:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any *untried indictment, information, or complaint* on the basis of which *a detainer has been lodged* against the prisoner, he shall be brought to trial within 180 days . . . .

Tex. Code Crim. Pro. Ann. art. 51.14, art III(a) (emphasis added).

5

And any request for final disposition only applies to those untried charges for which detainers were lodged:

> Any request for final disposition made by a prisoner pursuant to Paragraph (a) hereof shall operate as a request for final disposition of all *untried indictments, informations, or complaints* on the basis of which *detainers have been lodged* against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed.

Tex. Code Crim. Pro. Ann. art. 51.14, art. III(d) (emphasis added).

## A. Untried indictments

The IADA provides the defendant a right to request a prompt trial when "there is pending in any other party state any untried indictment, information, or complaint." Tex. Code Crim Proc. Ann. art. 51.14, art. III(a). "The most natural interpretation of the words 'indictment,' 'information,' and 'complaint' is that they refer to documents charging an individual with having committed a criminal offense." *Carchman v. Nash*, 473 U.S. 716, 724 (1985).[5]

On January 2, 2020, the date that Perez made his request to be brought to trial, a complaint and affidavit were filed by a Killeen Police Officer, alleging that Perez committed aggravated sexual assault of a child. A "complaint" can be used to charge a misdemeanor offense. Tex. Code Crim. Proc. Ann. arts. 2.05, 15.04. But it cannot be the charging document for a felony. To be tried for a felony offense, a defendant must be indicted. Tex. Const. art. I, § 10, art. V, §12; *Riney v. State*, 28 S.W.3d 561, 564–65 (Tex. Crim. App. 2000); *Ex parte Ulloa*, 514 S.W.3d 756, 759–60 (Tex. Crim. App. 2017). In short, "there is no such thing as a felony complaint and the filing of a complaint does not vest the district court with felony jurisdiction." *Mungia v. State*, No. 07-21-00183-CR, 2022 WL 1205571, at *4 (Tex. App.—Amarillo Apr. 22, 2022, no pet.) (mem. op., not

---

[5] "[B]ecause the Detainer Agreement is an interstate compact approved by Congress and is thus a federal law subject to federal rather than state construction." *Cuyler v. Adams*, 449 U.S. 433, 438 (1981)

designated for publication) (Pirtle, J., concurring). The crime alleged in the complaint filed in this case, aggravated sexual assault of a child, is a felony and therefore could only be charged by indictment. Tex. Penal Code § 22.01(a)(2)(B), (e). Perez was not indicted until February 26, 2020, almost two months after he made the request to be brought to trial.

The complaint in this case apparently served as the basis for an arrest warrant. *Rios v. State*, 718 S.W.2d 730, 732 (Tex. Crim. App. 1986) (en banc) (stating that the two functions of a complaint are "to supply a basis for a magistrate to issue warrant for arrest pursuant" and "to serve as a charging instrument for trial in municipal court"); *Rodriguez v. State*, 491 S.W.3d 18, 25 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("Among other things, complaints may be filed to obtain a finding regarding probable cause for a person's arrest or continued detention."). The "Notice of Untried Indictment" informed Perez that the untried indictment, information, or complaint against him was "Warrant # KDP 18-002813." But even though a document alleges a crime, it is not an untried indictment, information or complaint if it cannot be the basis of a prosecution. "This interpretation is reinforced by the adjective 'untried,' which would seem to refer to matters that can be brought to full trial, and by Art. III's requirement that a prisoner who requests final disposition of the indictment, information, or complaint 'shall be *brought to trial* within 180 days.'" *Carchman*, 473 U.S. at 724–25 ("A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III."). Because prosecution against Perez could not be initiated based on the arrest warrant, the complaint filed on January 2, 2020, was not an "untried complaint" under the IADA.

Because no charging document had been filed at the time he made his request, there was no untried indictment making the provisions of the AIDA applicable.

7

## B. Detainer

Even if an indictment had been on file, Perez still had to show that a detainer had been lodged based on that indictment. "Clearly the only 'indictments, informations, or complaints' which are subject to dismissal with prejudice are those 'on the basis of which a detainer has been lodged.'" *Johnson v. State*, 900 S.W.2d 475, 479 (Tex. App.—Beaumont 1995), aff'd as reformed, 930 S.W.2d 589 (Tex. Crim. App. 1996).

"Detainer" is not defined in the IADA. The United States Supreme Court and the Texas Court of Criminal Appeals have construed it to be "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993); *Votta*, 299 S.W.3d at 135, n.5 (defining detainer by quoting definition in *Fex*); *Davila v. State*, 623 S.W.3d 1, 9 (Tex. App.—Austin 2020, pet. ref'd).

The record before us does not contain a detainer filed with the Federal Bureau of Prisons. The only evidence of a detainer is the "Certificate of Inmate Status" completed by the Warden of the Fort Worth Medical Center. It states that the detainers on file for Perez were a "Bell County Sheriff's Department Warrant #KPD18-002813." But "[a]n arrest warrant is not a detainer." *Davila*, 623 S.W.3d at 9–10 (citing *United States v. Bottoms*, 755 F.2d 1349, 1350 (9th Cir. 1985) (holding that defendant was not subject to a detainer under the IADA when he "was being detained by virtue of an arrest warrant")); *see also State v. Morrison*, 364 S.W.3d 779, 785 (Mo. Ct. App. 2012) (holding that a warrant for arrest "does not, itself, constitute a *de facto* detainer"); *State v. Prentice*, 170 N.C. App. 593, 600, (2005) (holding that an arrest warrant did not qualify as a detainer because there was "nothing in the record to suggest that the State requested federal officials to hold defendant at the end of his federal sentence or notify it prior to defendant's release

from federal custody."); *State v. Welker*, 127 Wash. App. 222, 229, (2005), aff'd, 157 Wash. 2d 557, (2006) (holding that a warrant was not a detainer when it did not ask the state of imprisonment to hold the defendant or notify the County when he would be released). At most, the certificate is evidence that the prison officials were notified of an arrest warrant. There is no evidence that the prosecutors requested that the prison hold Perez for them and notify them of his release.

We cannot speculate as to the existence of a detainer. *Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007). Perez had the duty to develop the record to ensure that the issues are properly before us. *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016) ("Generally, the appealing party carries the burden to ensure that the record on appeal is sufficient to resolve the issues presented."). He did not do so.

Perez has not established that a detainer had been lodged against him at the time he made the request for his case to be brought to a final disposition, and therefore has not established that the deadlines in the IADA applied. *Davila*, 623 S.W.3d at 11 ("The record before this Court is insufficient to establish that the provisions of the IADA were triggered because the record does not demonstrate that the State of Texas . . . lodged a detainer against appellant for any of the charges . . .").

### C. Emergency orders

Finally, even if a detainer had been lodged on an untried indictment, the deadlines in the IADA were suspended by virtue of the COVID-19 emergency orders. As detailed above, a string of Texas Supreme Court emergency orders continuously authorized courts to suspend or modify deadlines from March 13, 2020, until August 1, 2021.[6] Perez argues that his "right to be brought

---

[6] "Notwithstanding any other statute, the supreme court may modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor." Tex. Gov't Code Ann. § 22.0035(b).

to trial within 180 days is certainly a substantive statutory right" that "[t]he emergency orders could not take away from him." We disagree.

Perez relies on *In re State ex. Rel. Ogg*, 618 S.W.3d 361 (Tex. Crim. App. 2021). In that case, the defendant wished to waive a jury trial, but the State did not consent to the waiver as is its right. *Id.* at 362; Tex. Code Crim. Proc. Ann. art. 1.13. The trial court granted the defendant's request for a bench trial, reasoning that the requirement of the State's consent was a procedure that the COVID-19 emergency orders allowed it to modify. *Id.* In analyzing the scope of the modifications allowed under the orders, the Court of Criminal Appeals focused on whether the modification would expand the trial court's jurisdiction and "permit trial judges to enlarge the types of proceedings over which they have authority." *Id.* at 365. The Court stated,

> A court may extend a deadline or alter a procedure that would otherwise be part of the court proceedings. It does not suggest that a court can create jurisdiction for itself where the jurisdiction would otherwise be absent or that a judge could create authority to preside over proceedings over which the judge would otherwise be barred from presiding.

*Id.* at 364. The Court gave examples of the types of "modifications" that would not be allowed by the emergency orders: a court with jurisdiction over felony cases could not hear misdemeanor cases; a probate court could not hear criminal cases; and a recused judge could not decide to hear a case after all. *Id.* at 364–65. In *Ogg*, the Court held that trial courts "simply do [] not have the authority to conduct a bench trial when the State has not consented" and the emergency orders cannot be used to give them that authority. *Id.* at 365.

The COVID-19 emergency orders, therefore, could not modify deadlines that are jurisdictional because to do so would be to give the court "authority to preside over proceedings over which the judge would otherwise be barred from presiding." *Id.* at 364. For example, courts could not use the orders to extend the time to rule on a motion for new trial after it lost plenary

power. *State v. Rodriguez*, Nos. 01-20-00848-CR, 01-20-00849-CR, 2022 WL 2976296, at *2 (Tex. App.—Houston [1st Dist.] July 28, 2022, pet. ref'd) (mem. op., not designated for publication); *see also Garley v. State*, Nos. 13-20-00336-CR, 13-20-00337-CR, 2022 WL 2348055, at *5 (Tex. App.—Corpus Christi–Edinburg, June 30, 2022, pet. ref'd) (mem. op., not designated for publication) ("The deadline to rule on a motion for new trial is not procedural in nature—it is jurisdictional and, after it expires, the trial court loses authority to act in the case.").

The requirement that a trial be commenced within 180 days of a defendant's request is a statutory right, but not a jurisdictional one. *Ex parte Sanchez*, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996) (holding that habeas corpus was not available for IADA violations because the failure to hold a trial within 180 days was a not a jurisdictional defect). Unlike jurisdictional deadlines, like the deadline to grant a motion for new trial, a trial court does not automatically lose the authority to act after the 180 days passed. In fact, the deadlines under the IADA can be waived. *Compare In re Patchen*, No. 01-16-00947-CV, 2017 WL 976077, at *3 (Tex. App.—Houston [1st Dist.] Mar. 14, 2017, no pet.) (mem. op.) (dismissing argument that other party consented to the trial court's jurisdiction by not objecting when it signed an order for new trial after its plenary power expired), *with Estrada*, 647 S.W.3d at 928 (stating that the appellant waived his IADA complaint by not objecting to trial after the deadline).

Even if the IADA's deadlines applied, those deadlines were properly suspended while the Texas Supreme Court emergency orders were in effect. Before August 1, 2021, the date those orders terminated, the State filed its motion for continuance, extending the deadline under the terms of the IADA. Tex. Code Crim. Proc. Ann. art. 51.14, art. III(a).

## IV.  CONCLUSION

We overrule Perez's sole issue and affirm the judgment of the trial court.


MARIA SALAS MENDOZA, Chief Justice

February 21, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)